UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHARLES GOLBERT, Cook County Public Guardian, on behalf of Trinity B., Romeo S., Connor H., Jadiene T., Jymesha S., Tatyana H., and Jamya B., <br><br> Plaintiffs, <br><br> vs. <br><br> AURORA CHICAGO LAKESHORE HOSPITAL, LLC, doing business as Chicago Lakeshore Hospital; SIGNATURE HEALTHCARE SERVICES, LLC; BEVERLY J. WALKER; THE ESTATE OF GEORGE SHELDON; DAVID FLETCHER-JANZEN; NEIL SKENE; MICHAEL C. JONES; TIERNEY STUTZ; BEVERLY MIMS; MARCO LEONARDO; DENISE ELLIS; BROOKE SLOAN; NIAMA MALACHI; TAUSHA BLUITT; ELISABETH SCHEI; RICHARD KASYOKI; DION DILL; NIKOLAY KATSAROV; ADEBOLA ("DEBBIE") MAJEKODUNMI; SHANE MICHAELS; and EVE BROWNSTONE, <br><br> Defendants. | Case No. 19-cv-08257 <br><br> Honorable Judge Mary M. Rowland |

**RICHARD KASYOKI'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT UNDER RULE 12(b)(6)**

Defendant, Richard Kasyoki, by and through his attorneys, submits this Reply Brief in support of his motion to dismiss Plaintiffs' First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

**INTRODUCTION**

Plaintiff Charles Golbert's First Amended Complaint, brought on behalf of seven minors in the custody of the Illinois Department of Children and Family Services ("DCFS"), fails to state a claim against Defendant Richard Kasyoki ("Kasyoki"). As shown below, Plaintiffs rely on group

1

pleading and group argument in their Response to convince this Court that the First Amended Complaint ("FAC") states a claim against Kasyoki. Plaintiffs' collective Response, which largely parrots the FAC, fails to explain how their conclusory allegations state any plausible claim for relief against Kasyoki under § 1983 or state law. Because Plaintiffs cannot satisfy their pleading requirements with mere legal conclusions, their claims against Kasyoki should be dismissed with prejudice.

## ARGUMENT

**I.   Plaintiffs Have Not Alleged Sufficient Facts to Support Their § 1983 Claims.**

Plaintiffs concede, as they must, that Kasyoki cannot be considered a state actor unless he was acting under color of state law. (*See* Dkt. 190, at 13–14). The Response attempts to set forth theories in an attempt to establish that Kasyoki was a state actor – namely, that Kasyoki conspired or was jointly engaged with state actors to deprive Plaintiffs of their constitutional rights, that Kasyoki performed an exclusive public function, and that a sufficiently close nexus existed between DCFS and Lakeshore such that Kasyoki's actions may fairly be treated as that of DCFS itself. (*See* Dkt. 190, at 13–17). To that end, Plaintiffs' factual allegations against Kasyoki are insufficient, and their § 1983 claims against him must be dismissed.

**A.   Plaintiffs Have Not Alleged Sufficient Facts to Find that Kasyoki was a State Actor Capable of Liability under § 1983.**

As a private actor, Kasyoki cannot be subject to § 1983 liability unless his actions can be "characterized as state action." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 815 (7th Cir. 2009). As shown below, Plaintiffs' FAC fails to allege any facts sufficient for the Court to conclude that Kasyoki's involvement can be plausibly "characterized as state action," and Plaintiffs' Response Brief confirms this failure.

2

First, in just one paragraph addressing all nine Chicago Lakeshore Individual Defendants generally, Plaintiffs make the conclusory argument that their allegations support a "conspiracy theory" of state action against all nine Chicago Lakeshore Defendants. *See* Dkt. 190 at 14-15. Plaintiffs are wrong. To establish a "conspiracy theory" of state action, Plaintiffs must plead factual allegations that Kasyoki and a state actor "reached an understanding to deprive the plaintiff of his constitutional rights" and that the private actor (Kasyoki) was a "willful participant in the joint activity the State or its agents." *Spiegel*, 916 F.3d 611, 616 (7th Cir. 2019). Of the seven paragraphs in the FAC cited by Plaintiffs in their Response, only one mentions Kasyoki – paragraphs 78 – and it does not plausibly establish "conspiracy theory" of state action. *See* Dkt. 190 at 10-11 (citing FAC, Dkt. 135 ¶¶ 78-78 [sic], 83, 88-89, 98-99, 106).

Paragraph 78 alleges that Kasyoki's supervisor, Katsarov (a Chicago Lakeshore private actor), signed-off on "rounds logs" of Kasyoki's to conceal Kasyoki's sexual assault of Jymesha S. and failed to report it to staff of DCFS "despite a duty to so." FAC, Dkt. 135 ¶ 78. These allegations fail to state (or even raise an inference) that Kasyoki "reached an understanding" with a state actor to deprive any of the Plaintiffs of their constitutional rights, nor does it establish that Kasyoki was a "willful participant" in a non-existent conspiracy. The allegations actually negate the premise that Kasyoki "reached an understanding" with any state actor. *Spiegel*, 916 F.3d at 616.

Despite the lack of factual allegations as discussed above for "conspiracy theory" state action, Plaintiffs' Response goes on to state in a conclusory fashion that "all Individual CLS Defendants knew, or had reason to know, that the alleged abuse was take place, and worked with other Defendants to cover up these instances of abuse and keep the Hospital open to DCFS patients." *See* Dkt. 190 at 11. To begin, it is an incorrect statement of law for Plaintiffs to assert

3

that a "conspiracy theory" for state action is satisfied if an individual did not have *actual knowledge* of the conspiracy but "*had reason to know*" of it. *Compare* Dkt. 190 at 11 (making this argument with no legal authority), *with Spiegel*, 916 F.3d at 616 (requiring defendant to "reach an understanding" and be a "willful" participant with a state actor). Plaintiffs cannot square their proposed standard of "had reason to know of it" with the *mens rea* requirement of "willful" participant. Regardless, this argument is nothing more than a "legal conclusion" and is insufficient to survive a motion to dismiss. *See Kempa 3105, LLC v. Sauk Vill., Ill.*, No. 19 CV 8118, 2020 WL 4934972, at *4 (N.D. Ill. Aug. 24, 2020). For these reasons, the conspiracy theory liability argument fails.

Plaintiffs' reliance on the public function doctrine is likewise misplaced. "The relevant question is *not* simply whether a private group is serving a public function," rather, it "is whether the function performed has been traditionally the *exclusive* prerogative of the State." *Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982) (internal citation and quotations omitted) (emphasis in original). For purposes of § 1983, the critical issue is whether "DCFS, under Illinois law, is the only agency to be awarded legal custody of abused and neglected children for their protection." *Letisha A. By Murphy v. Morgan*, 855 F. Supp. 943, 949 (N.D. Ill. 1994). Care of DCFS wards is, therefore, not an exclusive public function. *See Letisha A.*, 855 F. Supp. at 949; *see also Garner v. Lakeside Cmty. Comm.*, 2011 WL 2415754, at 4* (N.D. Ill. June 13, 2011) (rejecting claim that "foster care management, adoptions, and prevention of child abuse" were exclusively public functions). And, the existence of a purported contract between DCFS and Chicago Lakeshore does not alter this relationship. *See Garner*, 2011 WL 2415754, at 5–6*.

The authority on which Plaintiffs rely—*Rodriguez v. Plymouth Ambulance Service* and *Woods v. Maryville Academy*—do not offer support to reach their desired result. In *Rodriguez*, the

4

Seventh Circuit noted that a private organization and their employees who have only an "incidental and transitory relationship" with a patient in State custody is simply too attenuated to convert a private individual's actions into state action. 577 F.3d 816, 827 (7th Cir. 2009). *Woods* found that a private, residential institution that taking custody of DCFS wards from the State for *long-term* placements was sufficiently close of a relationship to find state action. No. 17-cv-8273, 2018 WL 6045219, at *7 (N.D. Ill. Nov. 19, 2018). But, DCFS wards, including Plaintiffs, were sent to Chicago Lakeshore only for treatment of "acute psychiatric symptoms" for "short amount[s] of time," *see* FAC ¶¶ 42–45, therefore *Woods* is distinguishable. Accordingly, because Plaintiffs have not adequately pled state action, their § 1983 claims against Kasyoki must be dismissed.

      **B.**     **Plaintiffs Trinity B., Romeo S., Connor H., Tatyana H., and Jamya B. Have Not Alleged Sufficient Facts to Find that Kasyoki was a State Actor Capable of Liability under Section 1983.**

In his opening brief (at pp. 6-7), Kasyoki made the argument that five Plaintiffs (Trinity B., Romeo S., Connor H., Tatyana H., and Jamya B.) have failed to assert allegations of personal involvement in a constitutional deprivation. In their Response, Plaintiffs do not confront this argument directly. Plaintiffs insist they have adequately pled Kasyoki's personal involvement as to each Plaintiffs because Kasyoki allegedly "affirmatively covered up the fact the sexual assaults occurred at all." *See* Dkt. 190 at 18. But while Plaintiffs make the *argument* in the Response that this occurred, there are not factual allegations in the FAC that put Kasyoki on notice as to each Plaintiff. Furthermore, for purposes of Plaintiffs' § 1983 claims, what Kasyoki "should have known" cannot serve as a basis for liability against him. *Woods*, 2018 WL 6045219, at *4. And Plaintiffs do not explain how the assaults of Jymesha S. and Tatyana H. – which both allegedly occurred in 2018 (*see* FAC, ¶ 77, 89) – can retroactively put Kasyoki on notice of abuse directed in 2017 against plaintiffs Trinity B. (*see* FAC, ¶ 68), Romeo S. (*see* FAC, ¶ 86), and Connor H (*see* FAC, ¶ 92). Plaintiffs' conclusory arguments should be rejected. *McCauley v. City of Chi.*,

671 F.3d 611, 616 (7th Cir. 2011). Accordingly, Plaintiffs Trinity B., Romeo S., Connor H., Tatyana H., and Jamya B. cannot plausibly suggest Kasyoki was personally involved in their alleged harm, which is fatal to their § 1983 claims against him.

### C. Plaintiffs Fail to Plead Other Elements Of Their § 1983 Claims.

Even assuming *arguendo* that Kasyoki was a state actor and was personally involved in Plaintiffs' alleged harm, their § 1983 claims against him are still inadequate.

### B. Plaintiffs Trinity B., Romeo S., Connor H., Tatyana H., and Jamya B. Have Not Adequately Pled Claims For Violations of the Fourteenth Amendment Against Katsarov (Count One).

In his opening brief, Kasyoki explained that Plaintiffs Trinity B., Romeo S., Connor H., Tatyana H., and Jamya B. failed to allege sufficient facts to plausibly suggest that he was personally involved in their purported harm or deliberately indifferent to them. *See* Dkt. 155, at 7; *see generally Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005) ("A prison official cannot be found liable under the Eight Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety."). The Response only addresses Defendant Brownstone's argument regarding Plaintiffs' failure to meet the deliberate indifference standard as set forth in her opening brief. *See* Dkt. 190, at 16–18. Consequently, Plaintiffs have forfeited any argument that Kasyoki was deliberately indifferent to Plaintiffs Trinity B., Romeo S., Connor H., Tatyana H., and Jamya B. *See Stransky v. Cummings Engine Co., Inc.*, 51 F.3d 1329, 1335 (7th Cir. 1995) ("[W]hen presented with a motion to dismiss, the non-moving party must proffer some legal to support his cause of action. The federal court will not invent legal arguments for litigants.").

Even if the Court does not find forfeiture, there are not factual allegations by Trinity B., Romeo S., Connor H., Jadiene T., and Jamya B., asserting Katsarov was deliberately indifferent. As such, Count I against Katsarov should be dismissed with respect to those minor plaintiffs.

6

### 2. Plaintiffs Do Not State a Claim For Violation Of The First and Fourteenth Amendment Right of Access To The Courts Against Kasyoki (Count Two).

Plaintiffs do not plead sufficient facts to state a access-of-courts claim against Kasyoki. A claim for deprivation of the constitutional right of access to courts requires a plaintiff to plead an underlying cause of action, whether anticipated or lost, and official acts "frustrating the litigation" of that cause of action. *See Christopher v. Harbury*, 536 U.S. 403, 415–16 (2002).

In their Response, Plaintiffs assert that because the "Individual CLS Defendants" conspired to conceal evidence of Plaintiffs' abuse, they have adequately alleged a right of access to the court claims against Dill. *See* Dkt. 190 at 25–26. This assertion mirrors the conclusory allegations in the Complaint (*see* FAC ¶¶ 143–145), which do not satisfy the pleading requirements to state an access-to-courts claim (*see Howard v. Webster*, 339 F. App'x 616, 618 (7th Cir. 2009)). Moreover, Plaintiffs' reliance on *LaPorta v. City of Chicago*, 102 F. Supp. 3d 1014, 1023 (N.D. Ill. 2015), is distinguishable, because the court found significant the allegations that the City of Chicago spent *four years* allegedly covering up key facts. No such allegations exist in the FAC. Furthermore, it is well established that "[n]ot every act of deception in connection with a judicial proceeding gives rise to a constitutional action." *Robin v. City of Zion*, No. 15 C 11377, 2016 WL 3539126, at *4 (N.D. Ill. June 29, 2016). Even assuming Plaintiffs had alleged that Kasyoki participated in a "cover-up," "[a] cover-up that somewhat delays redress but still allows sufficient time for the plaintiff to file a civil action before the expiration of the limitations period does not substantially prejudice the plaintiff's access to court." *Harer v. Casey*, 962 F.3d 299, 307 (7th Cir. 2020). Plaintiffs have filed this instant action and, in doing so, have demonstrated that their right to petition the courts for an underlying cause of action has not been impaired. *See id*. Try as they might, Plaintiffs cannot sufficiently plead an access-to-courts claim against Kasyoki.

7

### 3. Plaintiffs Have Not Stated A Claim For Failure To Intervene Against Kasyoki (Count Three).

Plaintiffs have not stated a claim for failure to intervene against Kasyoki. The elements of a failure to intervene claim include that (1) the defendant knew that a constitutional violation was committed and (2) had a realistic opportunity to prevent it. *Gill v. City of Milwaukee*, 850 F.3d 335, 342 (7th Cir. 2017). In conclusory fashion, Plaintiffs attempt to hold Kasyoki liable by alleging that Kasyoki "facilitated, approved, or condoned" the "Abuse to which the Child Victims were subjected to." Yet Plaintiffs' own case law cited supports Kasyoki's motion to dismiss. *See* Dkt. 190 at 27 (citing *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994) (stating that the defendant "who is *present* and fails to intervene to prevent other law enforcement from infringing on the constitutional rights of citizens….") (emphasis added)). Here, Plaintiffs never allege that Kasyoki was "present" for any alleged sexual assault other than Jymesha S. and Jadiene T., denial of the access to the courts at to any Plaintiffs, or conspiracy to deprive constitutional rights as to any Plaintiffs, *see* Dkt. 190 at 27, so Plaintiffs' argument fails under their own cited case law. *See also Gill v. City of Milwaukee,* 850 F.3d 335, 342 (7th Cir. 2017).

Moreover, Plaintiffs appear to be conflating failure-to-intervene liability with their constitutional claims in Counts I and II because failure-to-intervene liability requires, again, the defendant to be "present" and have had the opportunity *to intervene* prior to the constitutional violation occurring. *See id.* None of the allegations in Plaintiffs' FAC or cited in Plaintiffs' Response as to Kasyoki, however, involve him being present and aware that such a constitutional violation was occurring for any Plaintiffs other than Jymesha S. and Jadiene T. and denying the opportunity to intervene. *See* Dkt. 190 at 26-27. Therefore, Plaintiffs have failed to plausibly allege a failure-to-intervene claim. *Yang*, 37 F.3d at 285; *Gill*, 850 F.3d at 342.

Accordingly, Count Three should be dismissed with prejudice as to Kasyoki.

### 4. Plaintiffs Have Not Adequately Pled Conspiracy to Deprive Constitutional Rights Against Kasyoki (Count Four).

Plaintiffs' claims against Kasyoki for conspiracy to deprive constitutional rights must be dismissed. To state a § 1983 conspiracy claim against Kasyoki, Plaintiffs must allege facts plausibly suggesting an "express or implied agreement among defendants to deprive them of their constitutional rights" and "actual deprivations of those rights in the form of overt acts in furtherance of the agreement." *Scherer v. Balkema*, 840 F.2d 437, 442 (7th Cir. 1988). In their Response, Plaintiffs correctly state they are not required to meet a "heightened" pleading standard, but the standard cited above does not call for such a pleading standard and it is in fact the case Plaintiffs cite in their own Response Brief. *See* Dkt. 190 at 22. Instead, Plaintiffs broadly argue that they have alleged "ample direct and circumstantial evidence" supporting the existence of an alleged conspiracy by the "Individual CLS Defendants," *see* Dkt. 190 at 22–25.

However, as explained above at Section I(A), *see* pages 2-5, the FAC does not contain "a whiff of a conspiratorial agreement" between Kasyoki and the other defendants to deprive any one Plaintiff or more than one Plaintiff of their constitutional rights. *See Redd v. Nolan*, 663 F.3d 287, 292 (7th Cir. 2011). Moreover, Plaintiffs' bullet-pointed list in their Response, *see* Dkt. 190 at 23-24, only complains about what Plaintiffs assert are constitutional violations against particular Defendants – not a conspiracy to commit a constitutional violation. *Id.* Again, a conspiracy claim necessarily requires plausible factual allegations that *a mutual agreement was struck between two parties* to commit a constitutional violation and that the defendant was a "willful" participant and took an overt act in furtherance of the conspiracy. *Redd*, 663 F.3d at 292; *Outlaw v. City of Cahokia*, 2017 WL 1491836, at *5 (S.D. Ill. April 26, 2017) ("However, after *Bell Atlantic* and *Iqbal*, bare conclusions that defendants are 'leagued in a conspiracy' are not enough."). At most, Plaintiffs argue that Kasyoki "conspired" with Katsarov, but Katsarov is not a state actor, and, furthermore,

9

those allegations are only with respect to one Plaintiff out of seven (Tymesha S.). Accordingly, Count Four should be dismissed with prejudice as to Kasyoki.

## II. Plaintiffs Do Not Sufficiently or Plausibly Pled State Law Claims.

### A. Plaintiffs Do Not State A Claim For Intentional Infliction of Emotional Distress Against Kasyoki.

In their Response, Plaintiffs again make the conclusory argument that Kasyoki is liable for intentional infliction of emotional distress ("IIED") as to all Defendants yet does not explain how each of the Plaintiffs have stated a claim against Kasyoki. Tellingly, Plaintiffs Trinity B., Romeo S., Connor H., Tatyana H., and Jamya B. assert no allegations against him. *See* Dkt. 190, at 28. To state a claim for IIED under Illinois law, a plaintiff must allege: (1) the defendant's conduct was truly extreme and outrageous, (2) the defendant either intended that his conduct would cause severe emotional distress or knew that there was a high probability that his conduct would do so, and (3) the defendant's conduct did in fact cause severe emotional distress. *Ostendorf v. Elkay Mfg. Co.*, No. 94 C 50170, 1994 WL 741425, at *3 (N.D. Ill. Dec. 29, 1994). The FAC, even when read as a whole, does not support the inference that Kasyoki had knowledge of the acts or omissions resulting in the minor plaintiffs' harm (Trinity B., Romeo S., Connor H., Tatyana H., and Jamya B.). Again, there are no plausible allegations that Kasyoki was on notice prior to the sexual assaults for Plaintiffs Trinity B., Romeo S., Connor H., Tatyana H., and Jamya B.' that they would allegedly be. *See Welsh v. Commonwealth Edison Co.*, 306 Ill. App. 3d 148, 155–56 (1st Dist. 1999). As such, Count Eleven should be dismissed with prejudice as to Kasyoki.

### B. Plaintiffs Do Not State A Claim For Civil Conspiracy Against Kasyoki.

Plaintiff's state law claim for civil conspiracy suffers from the same pleading defects as their federal conspiracy claim and Kasyoki adopts those arguments here. *See* Section I(A) at pp. 2-5; Section I(B)(4) at pp. 8-10. To state a claim for civil conspiracy against Kasyoki, Plaintiffs

must allege the existence of an agreement. *Tucker v. Soy Capital Bank & Tr. Co.*, 2012 IL App (1st) 103303, ¶ 52 (internal citation omitted). For all the reasons in Section I(A) at pp. 2-5 and Section I(B)(4) at pp. 8-10, above, Plaintiffs have failed to plausibly allege the existence of a mutual agreement between Kasyoki and any defendant to intentionally infliction emotional distress on any of the Plaintiffs. For these reasons, Count Fourteen should be dismissed with prejudice as to Kasyoki.

### C. Plaintiffs Have Waived Any State Law or Medical Negligence Claim Against Kasyoki.

In Kasyoki's opening brief, he specifically moved to dismiss any state law medical negligence claim against him for failing to comply with the requirements of 735 ILCS 5/2-622. (*See* Dkt. 155, at 14–15) In response, Plaintiffs do not dispute this and concede the following: "[t]he Child Victims have not asserted state law negligence claims against the Individual CLS Defendants, nor have they alleged the Individual Defendants engaged in medical malpractice." (See Dkt. 190, at 30) As such, Plaintiffs have waived any state law or medical negligence claim against Kasyoki. *See Hamer v. Neighborhood Hous. Servs. of Chicago*, 897 F.3d 835, 840 (7th Cir. 2018) ("Waiver is an intentional relinquishment or abandonment of a known right") (internal citation and quotations omitted).

### CONCLUSION

For these reasons, Plaintiffs' claims against Kasyoki should be dismissed with prejudice.

Dated: November 20, 2020        Respectfully submitted,

/s/ Matthew Kaminski

Michael E. Prangle (mprangle@hpslaw.com)
Michael T. Koptik (mkoptik@hpslaw.com)
Daria A. Porta (dporta@hpslaw.com)
Matthew J. Kaminski (mkaminski@hpslaw.com)
Matthew E. Rechtoris (mrechtoris@hpslaw.com)
HALL PRANGLE & SCHOONVELD LLC

11

200 South Wacker Drive, Suite 3300
Chicago, Illinois 60606
Tel: (312) 267-6881
*Counsel for Defendant Richard Kasyoki*

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5 and Northern District of Illinois Local Rule 5.5, the undersigned, an attorney of record in this case, hereby certifies that, on November 20, 2020, a true and correct copy of **Richard Kasyoki's Reply in Support of His Motion to Dismiss Plaintiffs' Amended Complaint Under Rule 12(b)(6)** was filed electronically by CM/ECF, which caused notice to be sent to all counsel of record.

Dated: November 20, 2020                /s/ Matthew Kaminski