# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES GOLBERT, Cook County Public Guardian, on behalf of Trinity B., Romeo S., Connor H., Jadiene T., Jymesha S., Tatyana H., and Jamya B., | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| | ) | Case No. 19-cv-08257 |
| vs. | ) ) | |
| | ) | Honorable Judge Mary M. |
| AURORA CHICAGO LAKESHORE HOSPITAL, LLC, doing business as Chicago Lakeshore Hospital; SIGNATURE HEALTHCARE SERVICES, LLC; BEVERLY J. WALKER; THE ESTATE OF GEORGE SHELDON; DAVID FLETCHER-JANZEN; NEIL SKENE; MICHAEL C. JONES; TIERNEY STUTZ; BEVERLY MIMS; MARCO LEONARDO; DENISE ELLIS; BROOKE SLOAN; NIAMA MALACHI; TAUSHA BLUITT; ELISABETH SCHEI; RICHARD KASYOKI; DION DILL; NIKOLAY KATSAROV; ADEBOLA ("DEBBIE") MAJEKODUNMI; SHANE MICHAELS; and EVE BROWNSTONE, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Rowland |
| Defendants. | | |

**SIGNATURE HEALTHCARE SERVICES, LLC AND AURORA CHICAGO LAKESHORE HOSPITAL, LLC'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT UNDER RULE 12(b)(6)**

# **TABLE OF CONTENTS**

Page

ARGUMENT ..................................................................................................................1

I.    Plaintiffs Have Not Alleged Sufficient Facts To Bring Claims Against Signature Under Any Theory Of Liability. .............................................................................1

     A.   Plaintiffs' Factual Allegations Fail To Show Signature's Direct Participation. ......................................................................................1

     B.   Plaintiffs Have Not Pled That Chicago Lakeshore Is Signature's Alter Ego. ................................................................................................3

II.   Plaintiffs Have Not Stated Section 1983 Claims Against Signature And Chicago Lakeshore. ..........................................................................................................5

     A.   Plaintiffs Have Not Alleged That Chicago Lakeshore And Signature Are State Actors. ...........................................................................................5

     B.   Plaintiffs' Allegations Regarding Signature And Chicago Lakeshore's Policies And Procedures Are Too Thin To State Claims Under § 1983. ...............7

III.  Plaintiffs Fail To Plead State-Law Claims Against Signature And Chicago Lakeshore. ........................................................................................................11

     A.   Plaintiffs Have Not Stated A Negligence Claim Against Signature And Chicago Lakeshore. ..................................................................................11

     B.   Plaintiffs' Negligent Hiring, Training, And Retention Claims Are Unsupported By Any Factual Allegations Regarding Signature And Chicago Lakeshore. ..................................................................................12

     C.   Plaintiffs' Institutional Negligence Claims Cannot Proceed. ................................14

     D.   Plaintiffs' Respondeat Superior Claims Are Inadequately Plead. ........................15

CONCLUSION ............................................................................................................19

## **TABLE OF AUTHORITIES**

CASES                                                                  PAGE(S)

*Al Matar v. Borchardt,*
    No. 16-cv-8033, 2017 WL 2214993 (N.D. Ill. May 19, 2017)................................11

*Ames v. Ohle,*
    219 So. 3d 396 (La. Ct. App. 2017)........................................................................16

*Arias v. Allegretti,*
    No. 05-cv-5940, 2008 WL 191185 (N.D. Ill. Jan. 22, 2008)................................18

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)................................................................................................12

*Carmona v. City of Chi.,*
    No. 15-CV-462, 2018 WL 306664 (N.D. Ill. Jan. 5, 2018)..................................10

*Carney v. White,*
    843 F. Supp. 462 (E.D. Wis. 1994)........................................................................18

*Cima v. Wellpoint Health Networks, Inc.,*
    No. 05-CV-4127-JPG, 2008 WL 4671707 (S.D. Ill. Oct. 22, 2008) ........................4

*Deloney v. Bd. of Educ. of Thornton Twp.,*
    666 N.E.2d 792 (Ill. App. Ct. 1996) ......................................................................18

*Doe ex rel. Doe v. Lawrence Hall Youth Servs.,*
    966 N.E.2d 52 (Ill. App. Ct. 2012) ........................................................................18

*Doe v. Boy Scouts of Am.,*
    4 N.E.3d 550 (Ill. App. Ct. 2014) ..........................................................................16

*Doe v. Clavijo,*
    72 F. Supp. 3d 910 (N.D. Ill. 2014) ......................................................................18

*Doe v. Lee,*
    943 F. Supp. 2d 870 (N.D. Ill. 2013) ....................................................................18

*Doe v. Roe,*
    No. 12 C 9213, 2013 WL 2421771 (N.D. Ill. June 3, 2013) ................................18

*Eckert v. City of Chi.,*
    No. 08 C 7397, 2009 WL 1409707 (N.D. Ill. May 20, 2009) ................................11

*Estate of Watts v. Heine,*
    No. 07-CV-644, 2008 WL 4058032 (E.D. Wis. Aug. 26, 2008)............................18

*F.D.I.C. v. Saphir*,
    No. 10 C 7009, 2011 WL 3876918 (N.D. Ill. Sept. 1, 2011)..................................................15

*Fallon v. Indian Trail Sch.*,
    500 N.E.2d 101 (Ill. App. Ct. 1986) ......................................................................13

*Fletcher v. Atex, Inc.*,
    68 F.3d 1451 (2d Cir. 1995)....................................................................................3

*Forsythe v. Clark USA, Inc.*,
    864 N.E.2d 227 (Ill. 2007) ..........................................................................1, 2, 3

*Garner v. Lakeside Cmty. Comm.*,
    No. 10-cv-174, 2011 WL 2415754 (N.D. Ill. June 13, 2011)..................................6

*Giraldi v. Cmty. Consol. Sch. Dist. No. 62*,
    665 N.E.2d 332 (Ill. App. Ct. 1996) .....................................................................14

*Golbert v. Walker*,
    No. 18 C 8176, 2020 WL 1182670 (N.D. Ill. Mar. 12, 2020) .................................16

*Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*,
    570 F.3d 811 (7th Cir. 2009) ..................................................................................5

*Harrison v. Wexford Health Sources, Inc.*,
    No. 1:17-cv-01383-JBM, 2018 WL 659862 (N.D. Ill. Feb. 1, 2018)....................16

*Hemphill v. Sayers*,
    552 F. Supp. 685 (S.D. Ill. 1982)............................................................................5

*Holmes v. United Airlines, Inc.*,
    No. 10 C 8085, 2012 WL 245136 (N.D. Ill. Jan. 25, 2012) .....................................1

*Hoover v. Univ. of Chi. Hosps.*,
    366 N.E.2d 925 (Ill. App. Ct. 1977) .....................................................................18

*Howell v. Father Maloney's Boys' Haven, Inc.*,
    424 F. Supp. 3d 511 (W.D. Ky. 2020)....................................................................6

*Johnson v. Cook Cnty.*,
    526 F. App'x 692 (7th Cir. 2013) .........................................................................15

*Johnson v. Cook Cnty. Sheriff's Off.*,
    No. 16 C 07523, 2018 WL 2193235 (N.D. Ill. May 14, 2018) ........................18–19

*Jones v. Barber*,
    No. 17-cv-07879, 2020 WL 1433811 (N.D. Ill. Mar. 24, 2020) .........................9–10

*Kempa 3105, LLC v. Sauk Vill., Ill.*,
 No. 19 CV 8118, 2020 WL 4934972 (N.D. Ill. Aug. 24, 2020) ..............................................6

*Lemons v. City of Milwaukee*,
 No. 13-C-0331, 2016 WL 3746571 (E.D. Wis. July 8, 2016) .................................................18

*Letisha A. by Murphy v. Morgan*,
 855 F. Supp. 943 (N.D. Ill. 1994) ..........................................................................................6

*Martin v. Milwaukee Cnty.*,
 904 F.3d 544 (7th Cir. 2018) .................................................................................................18

*McCauley v. City of Chi.*,
 671 F.3d 611 (7th Cir. 2011) ...................................................................................................5

*McTigue v. City of Chi.*,
 60 F.3d 381 (7th Cir. 1995) .....................................................................................................9

*Mikolon v. City of Chi.*,
 No. 14 CV 1852, 2014 WL 7005257 (N.D. Ill. Dec. 11, 2014) ................................7, 8, 9, 10

*Milburn v. Anne Arundel Cnty. Dep't of Soc. Servs.*,
 871 F.2d 474 (4th Cir. 1989) ...................................................................................................6

*Moore v. ING Fin. Partners Inc.*,
 No. 3-09-0587, 2010 WL 9116762 (Ill. App. Ct. Sept. 10, 2010)..........................................13

*Nowack v. Warner*,
 169 F. Supp. 3d 811 (N.D. Ill. 2015) .......................................................................................9

*Randi F. v. High Ridge YMCA*,
 524 N.E.2d 966 (Ill. App. Ct. 1988) ......................................................................................18

*Rankins v. Howard*,
 No. 11-CV-1153-JPS, 2012 WL 5932029 (E.D. Wis. Nov. 27, 2012)....................................18

*Richards v. U.S. Steel*,
 869 F.3d 557 (7th Cir. 2017) .................................................................................................18

*Rodriguez v. Plymouth Ambulance Serv.*,
 577 F.3d 816 (7th Cir. 2009) ...................................................................................................7

*Sanders v. Sheehan*,
 No. 09 C 7707, 2010 WL 2990121 (N.D. Ill. July 26, 2010) .................................................11

*Sea-Land Servs., Inc. v. Pepper Source*,
 941 F.2d 519 (7th Cir. 1991) ...................................................................................................4

*Serna v. Sears,*
    No. 13-cv-03359, 2015 WL 3464460 (N.D. Ill. May 29, 2015)..............................................11

*Shields v. Illinois Dep't of Corr.,*
    746 F.3d 782 (7th Cir. 2014) ...................................................................................................15

*Slabon v. Sanchez,*
    No. 15-CV-08965, 2020 WL 5763760 (N.D. Ill. Sept. 28, 2020) ......................................8, 10

*Spiegel v. McClintic,*
    916 F.3d 611 (7th Cir. 2019) .....................................................................................................9

*Springs v. Schwarz,*
    No. 15 C 5437, 2017 WL 4130504 (N.D. Ill. Sept. 19, 2017)...........................................10, 11

*Stern v. Ritz Carlton Chi.,*
    702 N.E.2d 194 (Ill. App. Ct. 1998) ........................................................................................18

*Swanson v. Baker & McKenzie, LLP,*
    527 F. App'x 572 (7th Cir. 2013) ..............................................................................................2

*Taylor v. Wexford Health Sources, Inc.,*
    No. 15 C 5190, 2016 WL 3227310 (N.D. Ill. June 13, 2016) ...............................................8, 9

*Terry v. Cnty. of Milwaukee,*
    No. 17-CV-1112-JPS, 2018 WL 2567721 (E.D. Wis. June 4, 2018) ...............................10, 11

*United States v. Bestfoods,*
    524 U.S. 51 (1998)......................................................................................................................3

*Van Horne v. Muller*, 705 N.E.2d 898 (Ill. 1998).........................................................................13

*Wilson v. City of Chi.,*
    No. 17 C 2525, 2017 WL 4682738 (N.D. Ill. Oct. 18, 2017) ....................................................8

*Wirth v. Sun Healthcare Grp., Inc.,*
    389 P.3d 295 (N.M. Ct. App. 2016)..........................................................................................16

*Woods v. Maryville Acad.,*
    No. 17 C 8273, 2018 WL 6045219 (N.D. Ill. Nov. 19, 2018).............................................6, 7

*Young v. United States,*
    942 F.3d 349 (7th Cir. 2019) ...................................................................................................15

## STATUTES

735 ILCS 5/2-622 .........................................................................................................................15

**OTHER AUTHORITIES**

Transcript of Oral Argument, *Nealy v. Nelson,*
   No. 11-C-541 (E.D. Wis. Jan. 6, 2014), ECF No. 168 ..........................................................18

Plaintiffs' vague and conclusory allegations fail to provide factual support for their causes of action against Signature and Chicago Lakeshore. Plaintiffs' response only serves to confirm those shortcomings, simply parroting their unsupported complaint without explaining how their thin allegations state any plausible claim for relief under 42 U.S.C. § 1983 or state law. Because plaintiffs cannot meet their pleading burden with bold legal conclusions and incendiary rhetoric, their claims against Signature and Chicago Lakeshore should be dismissed with prejudice.

## ARGUMENT

### I.     Plaintiffs Have Not Alleged Sufficient Facts To Bring Claims Against Signature Under Any Theory Of Liability.

#### A.     Plaintiffs' Factual Allegations Fail To Show Signature's Direct Participation.

Plaintiffs' factual allegations do not show that Signature, the alleged parent company of Chicago Lakeshore, "specifically direct[ed] an activity [of Chicago Lakeshore], where injury [wa]s foreseeable" or "mandate[d] an overall course of action and then authorize[d] the manner in which specific activities contributing to that course of action [were] undertaken," as they must. *Holmes v. United Airlines, Inc.*, No. 10 C 8085, 2012 WL 245136, at *7 (N.D. Ill. Jan. 25, 2012) (quoting *Forsythe v. Clark USA, Inc.*, 864 N.E.2d 227, 237 (Ill. 2007)). What plaintiffs have alleged in their limited, non-conclusory factual allegations does not raise any plausible inferences as to Signature's involvement in the conduct alleged. In their response, plaintiffs argue that Signature and Chicago Lakeshore view the allegations "in a vacuum" and "in the light most favorable to them" (Dkt. 189 at 6), but that complaint is a misplaced effort to distract away from these inadequacies in their allegations. In failing to satisfy their pleading burden, they ask the Court to draw implausible inferences to hold Signature liable under federal and state law.

For example, plaintiffs allege that Signature required Chicago Lakeshore "to operate with insufficient staff to properly monitor patients" and did not provide Chicago Lakeshore "with the

1

resources or staff necessary to conduct proper background checks on staff . . . or to ensure proper training and licensing of staff" (Dkt. 135, First Amended Complaint ("FAC"), ¶¶ 56–57), but they include no factual allegations as to how Signature "required" insufficient staff at the hospital or what it failed to provide (or even how Chicago Lakeshore's background checks, training, or staffing were actually insufficient). Plaintiffs nonetheless argue these allegations allow the Court to infer that Signature's "failure to properly fund Chicago Lakeshore" precluded the hospital from hiring, training, and supervising "qualified staff" and that, in turn, "Signature's decision to not allow Chicago Lakeshore to hire qualified staff or to properly train and supervise staff resulted in the Hospital having staff that abused Plaintiffs." (Dkt. 189 at 6–7.) Plaintiffs essentially ask the Court to simply fill in the gap, which takes notice pleading too far. Without "any additional facts that would support that final inferential leap, this is the type of speculation that . . . [is] insufficient to pass muster under Rule 12(b)(6)." *Swanson v. Baker & McKenzie, LLP*, 527 F. App'x 572, 574 (7th Cir. 2013).

Plaintiffs rely on *Forsythe* to argue, in conclusory fashion, that their complaint is "replete with allegations regarding Signature's direct control over Chicago Lakeshore in a manner that foreseeably caused Plaintiffs' injuries." (Dkt. 189 at 4.) *Forsythe* did not hold the parent company liable but merely noted the trial court's grant of summary judgment was premature because it was unclear whether the corporations' common officer was acting on behalf of the parent or the subsidiary when implementing the budgetary strategy at issue. 864 N.E.2d at 240. Here, plaintiffs allege David Fletcher-Janzen "held himself out" as an officer of both Signature and Chicago Lakeshore (FAC ¶ 23), but their remaining allegations as to Fletcher-Janzen's involvement relate to actions he undertook on behalf of Chicago Lakeshore—not Signature (*id.* ¶¶ 98–100 (noting Fletcher-Janzen was a "member of [] Chicago Lakeshore Hospital's leadership" and discussing his

2

"direct involvement in the operations of" Chicago Lakeshore and knowledge gained as a result of his employment at Chicago Lakeshore)). Moreover, *Forsythe* stressed that "allegations of mere budgetary mismanagement . . . do not give rise to the application of direct participant liability" where there are no allegations that the parent company was "involved in the day-to-day activities or management" of its subsidiary. 864 N.E.2d at 237 (internal citation and quotation marks omitted). Such allegations are missing here.

Without adequate factual allegations, plaintiffs have not, and cannot, explain how their complaint allows for an inference that Signature had any involvement in Chicago Lakeshore's operations and activities beyond the normal incident of ownership. As discussed in Signature and Chicago Lakeshore's opening brief, Signature's oversight of Chicago Lakeshore's real estate transactions and budget are typical of a parent company and do not give rise to Signature's liability. *United States v. Bestfoods*, 524 U.S. 51, 72 (1998) (explaining that activities "consistent with the parent's investor status" like supervising a subsidiary's budget and performance, as well as articulating policies and procedures, should not give rise to direct liability); *see also Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1459–60 (2d Cir. 1995) (noting that requiring a subsidiary to seek approval for leases and significant capital expenditures is typical of a parent company).[1] Plaintiffs' attempt to hold liable Signature as a "direct participant" in the alleged misconduct falls short.

### B. Plaintiffs Have Not Pled That Chicago Lakeshore Is Signature's Alter Ego.

Accepting plaintiffs' alter ego theory of liability requires a similarly impossible inferential leap. Plaintiffs claim their complaint is "replete with allegations" supporting the inference that

---

[1] Plaintiffs' oversimplified disregard of the multiple cases finding a corporate parent was not liable (Dkt. 189 at 7) does not include meaningful distinctions of the case law. For example, plaintiffs represent that *Fletcher*—which Signature and Chicago Lakeshore cited for the principle that requiring a subsidiary to seek approval for leases and capital expenditures is typical of a parent (Dkt. 161 at 6–7)—lacked allegations of foreseeability. But the *Fletcher* court found the parent not liable in the context of an alter ego theory of liability, which does not include as an element foreseeability.

Chicago Lakeshore is the alter ego of Signature (Dkt. 189 at 8), but that assertion is patently false. Alter ego liability requires a showing that "there is such unity of interest and ownership that the separate personalities of the corporation[s] . . . no longer exist," as evidenced by factors such as a failure to comply with corporate formalities or failure to maintain adequate corporate records, commingling of funds or assets, undercapitalization, and one corporation treating the assets of another corporation as its own. *Cima v. Wellpoint Health Networks, Inc.*, No. 05-CV-4127-JPG, 2008 WL 4671707, at *3 (S.D. Ill. Oct. 22, 2008) (internal citation and quotation marks omitted). None of these factors are alleged in plaintiffs' complaint. As plaintiffs acknowledge in their response, the only factual allegation that plausibly speaks to any potential "unity of interest and ownership" between Signature and Chicago Lakeshore is their claim that Fletcher-Janzen "held himself out to the State of Illinois and DCFS as the Chief Executive Officer" of both entities (FAC ¶ 23). This allegation cannot support an inference that Chicago Lakeshore is Signature's alter ego; Illinois and Seventh Circuit law is clear that "[t]he mere fact that a parent and subsidiary corporation have common officers and directors is insufficient to justify disregarding the corporate form." *Cima*, 2008 WL 4671707, at *3 (internal citation and quotation marks omitted).

Even if plaintiffs had pled sufficient factual allegations to establish Chicago Lakeshore was a "mere instrumentality" of Signature, they have nevertheless failed to allege that "adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice," which is required to support an alter ego theory of liability. *Sea-Land Servs., Inc. v. Pepper Source*, 941 F.2d 519, 520 (7th Cir. 1991) (internal citation omitted). Plaintiffs claim this element is satisfied by the fact of their alleged injuries at Chicago Lakeshore (Dkt. 189 at 8), but this requirement contemplates a fraud or injustice *beyond* harm that has *already* occurred, *see Sea-Land*, 941 F.2d at 525 ("[A plaintiff] is required to show the kind of injustice to merit the evocation of the court's

essentially equitable power to *prevent* 'injustice.'" (emphasis added)).  Plaintiffs' claims against Signature must be dismissed.

## II.     Plaintiffs Have Not Stated Section 1983 Claims Against Signature And Chicago Lakeshore.

Plaintiffs failed to adequately allege that Signature and Chicago Lakeshore are state actors or that any policies or practices of either entity caused their alleged constitutional violations.  Their § 1983 claims against Signature and Chicago Lakeshore must be dismissed.[2]

### A.     Plaintiffs Have Not Alleged That Chicago Lakeshore And Signature Are State Actors.

Private actors, such as Signature and Chicago Lakeshore, cannot be sued under § 1983 unless their actions can be "characterized as state action[s]."  *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 815 (7th Cir. 2009).  As explained in Signature and Chicago Lakeshore's opening brief, plaintiffs' allegations fail on this front.  Plaintiffs claim their allegations show (1) "DCFS delegated a public function" to Chicago Lakeshore and Signature, (2) "joint action between [] DCFS" and both entities, and (3) "DCFS' control over [Chicago Lakeshore and Signature] (via the contract)" (Dkt. 189 at 11), but these conclusory assertions lack support in the factual allegations in the complaint.  Plaintiffs cannot satisfy their pleading burden by merely stating Signature and Chicago Lakeshore were state actors under these theories and claim that these statements, without supporting facts, are sufficient to allege state action.  *See McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (noting "legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to [a] presumption of truth").

---

[2] In their response, plaintiffs clarify for the first time that they have not alleged certain claims against Signature and Chicago Lakeshore, including Counts One, Two, Three, and Four.  (Dkt. 189 at 17 n.5.) However, because plaintiffs' complaint remains ambiguous as to which counts apply to which defendants, Signature and Chicago Lakeshore continue to request dismissal of these claims.  *See Hemphill v. Sayers*, 552 F. Supp. 685, 689 (S.D. Ill. 1982) (dismissing claims against defendants where it was "doubtful" whether the counts were directed to those defendants but clear plaintiff had "no . . . action against them").

These types of "allegations [reciting the elements of state action] do not demonstrate that the defendants acted under color of state law and are not sufficient to survive a motion to dismiss." *Kempa 3105, LLC v. Sauk Vill., Ill.*, No. 19 CV 8118, 2020 WL 4934972, at *4 (N.D. Ill. Aug. 24, 2020) (internal citation and quotation marks omitted).

Indeed, plaintiffs' factual allegations actually undermine any inference that Signature and Chicago Lakeshore were state actors under a joint action or control theory. Plaintiffs allege, for example, Chicago Lakeshore staff refused to cooperate with DCFS (*e.g.*, FAC ¶¶ 83, 106) and failed to report misconduct to DCFS "despite a duty to do so" (*e.g.*, *id.* ¶¶ 78, 83). They also allege that Chicago Lakeshore operated "with virtually no accountability" to DCFS. (*Id.* ¶ 3.) Further, Chicago Lakeshore's alleged contract with DCFS is not sufficient to establish "that the State controls, directs, or encourages the business of [the entity]," as plaintiffs allege. *Garner v. Lakeside Cmty. Comm.*, No. 10-cv-174, 2011 WL 2415754, at *5–6 (N.D. Ill. June 13, 2011).

Plaintiffs do not even address *Garner* or the numerous cases holding that the care of DCFS wards is *not* an exclusive public function. *See, e.g.*, *Garner*, 2011 WL 2415754, at *4 (rejecting claim that "foster care case management, adoptions, and prevention of child abuse" were exclusively public functions); *Letisha A. by Murphy v. Morgan*, 855 F. Supp. 943, 949 (N.D. Ill. 1994) ("[I]t is not the exclusive function of the State to care for and protect minors who are adjudicated to be abused and neglected by their natural parents.");[3] *see also Milburn v. Anne Arundel Cnty. Dep't of Soc. Servs.*, 871 F.2d 474, 479 (4th Cir. 1989) ("The care of foster children is not traditionally the exclusive prerogative of the State."); *Howell v. Father Maloney's Boys' Haven, Inc.*, 424 F. Supp. 3d 511, 517 (W.D. Ky. 2020) (same). There is no basis in plaintiffs'

---

[3] Plaintiffs argue *Letisha A.* is distinguishable, relying on *Woods v. Maryville Academy*. Although *Woods* distinguished the factual allegations underlying the two cases, it acknowledged the principle that "the custody and care of abused and neglected children is not an exclusive state function." No. 17 C 8273, 2018 WL 6045219, at *8 (N.D. Ill. Nov. 19, 2018).

6

complaint or in the relevant case law from which to infer DCFS delegated an exclusive public function to Chicago Lakeshore or Signature.

The two cases on which plaintiffs rely—*Rodriguez v. Plymouth Ambulance Service* and *Woods v. Maryville Academy*—do not change this. In *Rodriguez*, the Seventh Circuit cautioned there is no "pat answer as to whether any particular medical care arrangement constitutes state action" and noted "significant weight" should be given "to the degree to which the work of the private medical provider is controlled or influenced by the state." 577 F.3d 816, 827, 828 (7th Cir. 2009). As discussed, plaintiffs have not plausibly alleged Chicago Lakeshore was controlled by DCFS, which is fatal under *Rodriguez*.[4] *Woods*, on the other hand, focused on residential facilities that took over custody of DCFS wards from the state for long-term placements. 2018 WL 6045219, at *7 ("Custody, then, is paramount."). In contrast, plaintiffs allege here the DCFS wards were sent to Chicago Lakeshore only for treatment of "acute psychiatric symptoms" for "short amount[s] of time." (FAC ¶¶ 42–45.) Because Plaintiffs have not adequately pled state action, their § 1983 claims against Signature and Chicago Lakeshore must be dismissed.

### B.    Plaintiffs' Allegations Regarding Signature And Chicago Lakeshore's Policies And Procedures Are Too Thin To State Claims Under § 1983.

Even assuming plaintiffs' allegations could show Signature and Chicago Lakeshore were state actors, the § 1983 claims still fail. A private entity (properly found to be a state actor) may be held liable under § 1983 where a policy, practice, or custom of the entity caused the plaintiff's injury. *See Mikolon v. City of Chi.*, No. 14 CV 1852, 2014 WL 7005257, at *4 (N.D. Ill. Dec. 11, 2014). However, plaintiffs' conclusory allegations regarding any purported policies of Signature

---

[4] As to Signature, *Rodriguez* compels the conclusion that it is not a state actor for an additional reason. *Rodriguez* emphasized that "in order to be liable *as the state* for the provision of medical services, the private provider must have a direct, not an attenuated, relationship with the . . patient." 577 F.3d at 828. Plaintiffs have not alleged any facts that could allow an inference that Signature had "a direct, not an attenuated, relationship" with plaintiffs. (*See* Dkt. 161 at 11 n.6.)

or Chicago Lakeshore are too vague to put either defendant on proper notice of the alleged wrongdoing, as those allegations encompass virtually all activities from hiring and oversight of employees to patient care and treatment policies. (FAC ¶¶ 160, 165.) These types of allegations do not support a reasonable inference that the purported policies were the "moving force" behind the constitutional violations claimed. *See Mikolon*, 2014 WL 7005257, at *4 n.8 (explaining that the conclusory allegation that defendant "caused the constitutional violations alleged" was "not a well-pleaded fact suggesting that [defendant's] actions (or lack thereof) were indeed the driving force behind the [employees'] behavior in this case").

Plaintiffs merely lump together this wide range of supposed "policies," many of which plaintiffs allege are restrictive policies not to act—for example, policies to "not properly supervise or monitor patients" and "not preserve evidence" (FAC ¶ 160). In alleging the existence of these categorical policies, plaintiffs do not tailor their allegations to identify particular policies or tie their "injur[ies] to specific policies." *Taylor v. Wexford Health Sources, Inc.*, No. 15 C 5190, 2016 WL 3227310, at *4 (N.D. Ill. June 13, 2016). For example, plaintiffs provide only conclusory statements about the alleged policy to not properly train, supervise, monitor and discipline staff and "the existence of these alleged failures to train and supervise." *Wilson v. City of Chi.*, No. 17 C 2525, 2017 WL 4682738, at *2 (N.D. Ill. Oct. 18, 2017). They do not allege facts about who was improperly trained or monitored, or in what ways, or "how a failure to train or supervise created the circumstances in which the [employees] were able to violate [plaintiffs'] civil rights." *Id.* (finding similar allegations were "too thin to sufficiently plead a *Monell* claim"). "Mouthing the magic words adds air, but no weight." *Slabon v. Sanchez*, No. 15-CV-08965, 2020 WL 5763760, at *1 (N.D. Ill. Sept. 28, 2020). Moreover, despite alleging Signature and Chicago Lakeshore had policies of "not conduct[ing] proper background checks on staff" and "not

obtain[ing] in a timely manner medical examinations for patients who have been assaulted" (FAC ¶¶ 160, 165), they allege only one instance of each (*id.* ¶¶ 71, 88), which does not establish a widespread policy or practice, *Taylor*, 2016 WL 3227310, at *4.

Plaintiffs claim that "the alleged egregious misconduct" of the individual Chicago Lakeshore defendants allows the Court to infer the existence of the purported policies and practices and that such policies were the "moving force" behind the individual defendants' conduct. (Dkt. 189 at 16.) But this is an improper attempt to hold both entities responsible for all actions of Chicago Lakeshore employees. *See Mikolon*, 2014 WL 7005257, at *5. A corporate defendant in a § 1983 action "cannot be held liable *solely* because it employs a tortfeasor." *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019) (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978)); *see also McTigue v. City of Chi.*, 60 F.3d 381, 382 (7th Cir. 1995) ("The [defendant]'s *policy* must be the source of the [constitutional violation]." (emphasis added)). Allegations regarding the misconduct of the individual Chicago Lakeshore defendants, even if consistent with the policies alleged, are insufficient without more to "rais[e] a reasonable inference that [Signature or Chicago Lakeshore] maintained such policies, practices, or customs, or that they were the '*moving force*' behind [plaintiffs'] alleged constitutional violations." *See Nowack v. Warner*, 169 F. Supp. 3d 811, 814 (N.D. Ill. 2015) (emphasis added) (internal citation omitted).

Plaintiffs next attempt to bolster their § 1983 claims by referencing a third-party report from 2011, but their reliance on the 2011 report is misplaced. As alleged, the report predates the hospitalizations of all plaintiffs by at least six years and does not speak to the state of affairs at Chicago Lakeshore when plaintiffs were there. *Jones v. Barber*, No. 17-cv-07879, 2020 WL 1433811, at *6–7 (N.D. Ill. Mar. 24, 2020) (holding prisoner plaintiff could not "rely on a report that predate[d] his incarceration by nearly a decade to prop up his *Monell* claim, especially when

he offer[ed] no specifics" and collecting cases holding same). Courts throughout the Seventh Circuit have rejected similar attempts by plaintiffs to rely on third-party reports to allege a *Monell* claim, particularly where, as here, they do not include "discussion of the specific findings of the report or any allegations connecting the report findings to the misconduct alleged in [the] Complaint." *Carmona v. City of Chi.*, No. 15-CV-462, 2018 WL 306664, at *3 (N.D. Ill. Jan. 5, 2018) (explaining plaintiff could not rely on 2017 Department of Justice report because, while the report discussed deficiencies in the police department's training and disciplinary systems, plaintiff had "not alleged, nor [did] his Response indicate, how the deficiencies described in the report relate to [his] claim"); *see also, e.g.*, *Terry v. Cnty. of Milwaukee*, No. 17-CV-1112-JPS, 2018 WL 2567721, at *9 (E.D. Wis. June 4, 2018) (finding plaintiff's reliance on third-party report failed to support *Monell* claim because "[t]he fact that the [defendant] is under general scrutiny concerning the provision of medical care cannot serve as the hook for any later *Monell* claim also touching on medical treatment").

Perhaps in recognition of the conclusory, boilerplate nature of their allegations, plaintiffs attempt to salvage their claims by suggesting that legal conclusions are sufficient to survive a motion to dismiss a *Monell* claim. (Dkt. 189 at 13–14 & n.4.) This assertion is belied by case law consistently holding "conclusory allegations are *not* enough to carry a *Monell* claim past the pleading stage." *Mikolon*, 2014 WL 7005257, at *4 (emphasis added); *see also Slabon*, 2020 WL 5763760, at *11 ("The bar is not lower for *Monell* claims. Facts add value; conclusions do not."). "[S]peculative allegations regarding a policy or practice are also insufficient." *Springs v. Schwarz*,

No. 15 C 5437, 2017 WL 4130504, at *3 (N.D. Ill. Sept. 19, 2017).[5]  Plaintiffs' attempt to advance an expansive *Monell* theory falls flat without "factual allegations binding the theory together." *Terry*, 2018 WL 2567721, at *11.  The § 1983 claims against Signature and Chicago Lakeshore must be dismissed.

## III.  Plaintiffs Fail To Plead State-Law Claims Against Signature And Chicago Lakeshore.[6]

### A.  Plaintiffs Have Not Stated A Negligence Claim Against Signature And Chicago Lakeshore.

In their opening brief, Signature and Chicago Lakeshore explained that plaintiffs' negligence claims against them are "poorly defined, redundant, and overly broad."  (Dkt. 161 at 19.)  Plaintiffs' response fails to provide any clarity.  Plaintiffs claim their allegations "make clear they are challenging Defendants' conduct . . . and . . . clearly identify the agents and employees whose horrific actions caused the breaches."  (Dkt. 189  at 20.)  Even a cursory review of the complaint, with its collective pleading, undermines this assertion.  Among other things, plaintiffs have not identified who "fail[ed] to monitor and supervise Plaintiffs" (FAC ¶¶ 174(a), 181(b)), who "failed to . . . follow all applicable hospital policies, procedures, rules and regulations in the

---

[5] The cases cited by plaintiffs further illustrate they must plead more than broad, conclusory allegations to state a *Monell* claim.  *See, e.g.*, *Al Matar v. Borchardt*, No. 16-cv-8033, 2017 WL 2214993, at *3 (N.D. Ill. May 19, 2017) (alleging that defendant's specific "failure to train regarding religious sensitivity" caused the "violation of [plaintiff's] freedom of religious expression"); *Sanders v. Sheehan*, No. 09 C 7707, 2010 WL 2990121, at *5 (N.D. Ill. July 26, 2010) (alleging "over 100 paragraphs outlining the alleged misconduct exemplifying the City's unconstitutional policy [to not properly train, supervise, and discipline police officers] with detail"); *Serna v. Sears*, No. 13-cv-03359, 2015 WL 3464460, at *3 (N.D. Ill. May 29, 2015) (noting complaint provided "more than a mere boilerplate allegation, but rather an assertion that a specific action by a police officer was authorized pursuant to a particular written policy"); *Eckert v. City of Chi.*, No. 08 C 7397, 2009 WL 1409707, at *6 (N.D. Ill. May 20, 2009) (agreeing that "a plaintiff must provide more than boilerplate allegations to survive a motion to dismiss").

[6] Plaintiffs state that they have not alleged Counts Eleven (intentional infliction of emotional distress) or Fourteen (civil conspiracy) against Signature or Chicago Lakeshore, and those claims should not be dismissed as to Signature and Chicago Lakeshore.  (Dkt. 189 at 17 n.5.)  Because plaintiffs' complaint does not make clear which counts apply to which defendants, Signature and Chicago Lakeshore continue to request dismissal of these claims against them.  *See supra* n.1.

care and treatment of Plaintiffs" (*id.* ¶¶ 174(c), 181(e)), and who "fail[ed] to ensure that proper background checks were performed on all staff working at the Children's Hospital" (*id.* ¶¶ 174(h), 181(c)). Plaintiffs similarly fail to allege any causal connection between several of the purported breaches and their injuries. (Dkt. 161 at 19–20.) And in arguing they adequately pled that Signature and Chicago Lakeshore breached a duty to plaintiffs, they do nothing more than list the conclusory breaches set out in their complaint. (Dkt. 189 at 18–19.) It hardly bears repeating that these "labels and conclusions" are insufficient to state a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiffs further failed to plead any involvement of alleged corporate parent Signature that would justify the imposition of a duty of a care. Absent factual allegations supporting the conclusory assertions that "each Plaintiff was in the care of Defendant Signature as a patient" and "[i]t was the duty of Defendant Signature . . . to exercise reasonable care to make certain that the premises were safe for Plaintiffs" (FAC ¶¶ 178–79), which are belied by common sense, plaintiffs cannot bring a negligence claim against Signature. As explained in Signature and Chicago Lakeshore's opening brief and in § I.A., *supra*, Signature's involvement in Chicago Lakeshore's operations—which plaintiffs' allegations show were merely consistent with its status as an owner—also does not support the imposition of liability. (Dkt. 161 at 5–8, 20–21.)

## B. Plaintiffs' Negligent Hiring, Training, And Retention Claims Are Unsupported By Any Factual Allegations Regarding Signature And Chicago Lakeshore.

Plaintiffs' negligent hiring, training, and retention claims are equally unsupported. Plaintiffs attempt to uphold their claims by pointing to the purported misconduct of the individual Chicago Lakeshore defendants. (*See, e.g.*, Dkt. 189 at 22 ("Properly trained staff would not have engaged in any of those activities."); *id.* ("[G]iven the widespread and prolonged abuse committed by Hospital staff, Defendants cannot credibly contend that they properly exercised their duty to

hire staff that was fit to care for the Hospital's vulnerable patients."); *id.* at 23 ("[P]roperly trained staff would not rape and physically assault patients . . .")). However, plaintiffs' focus is misplaced. In a negligent hiring, training, or retention claim, "[i]t is the employer's wrongful act rather than the employee's wrongful act that is at issue." *Moore v. ING Fin. Partners Inc.*, No. 3-09-0587, 2010 WL 9116762, at \*6 (Ill. App. Ct. Sept. 10, 2010) (dismissing negligent supervision claim where "the gravamen of the [plaintiffs'] allegations [were] based, not on the direct actions of [the employer], but rather on the actions of its alleged agent"). Plaintiffs' complaint is devoid of factual, non-conclusory allegations regarding Chicago Lakeshore's hiring, training, or retention of its employees, let alone any involvement of Signature in those practices. Allegations regarding the misconduct of the individual Chicago Lakeshore defendants cannot save their claims.

Plaintiffs' general allegations that Chicago Lakeshore staff members were not qualified or properly trained are also insufficient. Illinois law is clear that, "[t]o successfully plead a cause of action for negligent hiring or retention, it is not enough for the plaintiff to simply allege that the employee was generally unfit for employment." *Van Horne v. Muller*, 705 N.E.2d 898, 905 (Ill. 1998); *see also Fallon v. Indian Trail Sch.*, 500 N.E.2d 101, 103–04 (Ill. App. Ct. 1986) (holding that allegations of a failure to investigate or of unqualified employees are insufficient to state a cause of action for negligent hiring absent supporting facts). Rather, a plaintiff must plead facts showing that the employer knew or should have known that the employee was likely to commit the specific misconduct at issue. *Van Horne*, 705 N.E.2d at 906 (where plaintiff "allege[d] that he was injured by [employee's] false, defamatory statements," he was "required to plead facts showing that [the employers] knew or should have known that [the employee] was likely to make false defamatory statements . . . if he was hired"). Plaintiffs have not done that here.

In their response, plaintiffs focus on defendants Elisabeth Schei and Richard Kasyoki. As

for Schei, plaintiffs claim their allegations show she was retained "despite her efforts to groom various Hospital patients" and that she was hired "despite a lengthy criminal history." (Dkt. 189 at 23.) However, Schei's alleged "grooming"—allowing patients to fill out their own medical paperwork and to use her vaping device (FAC ¶ 68)—does not allow for an inference that Chicago Lakeshore should have known Schei was likely to commit sexual assault, as is necessary to adequately plead a negligent retention claim. *See Giraldi v. Cmty. Consol. Sch. Dist. No. 62*, 665 N.E.2d 332, 340 (Ill. App. Ct. 1996) (finding "no factual or logical relationship" between employer's knowledge that employee had a history of tardiness and employee's sexual assault of plaintiff). And while plaintiffs claim that Signature and Chicago Lakeshore "ignore" their allegations regarding Schei's "lengthy criminal history" and improperly "focus on a single incident that occurred after her employment" (Dkt. 189 at 23), plaintiffs failed to allege any facts demonstrating Schei actually had a "lengthy criminal history" that made her "not fit to be a nurse" aside from the 2019 incident after she left Chicago Lakeshore (FAC ¶¶ 71–72). Plaintiffs' allegations with regard to Kasyoki also fail, as they contend Kasyoki was transferred to a different building after plaintiff Jymesha S. reported his alleged misconduct. (*Id.* ¶ 82.)

### C. Plaintiffs' Institutional Negligence Claims Cannot Proceed.

Plaintiffs' institutional negligence claims should be dismissed as duplicative of—and equally vague and conclusory as—the negligence claims brought in Counts Seven and Eight.[7] Plaintiffs deny their claims are duplicative, but their arguments in support of this assertion only serve to emphasize the identical nature of the claims. (*Compare* Dkt. 189 at 18, 20 *with id.* at 24–25.) While plaintiffs in civil actions may in some instances be allowed to proceed with *alternative*

---

[7] Plaintiffs argue Counts Eight and Nine are not duplicative of their institutional negligence claims. (Dkt. 189 at 24.) This appears to be an unintentional error, and Signature and Chicago Lakeshore assume plaintiffs intend to refer to Counts Seven and Eight.

claims, this is not a compelling reason to allow plaintiffs to proceed with *identical* claims, especially where, as here, the complaint "does not include any indication that the . . . claims are alternative theories." *F.D.I.C. v. Saphir*, No. 10 C 7009, 2011 WL 3876918, at *9 (N.D. Ill. Sept. 1, 2011). The Court has discretion to dismiss duplicative claims and should do so here. *See id.*[8]

In addition to being duplicative, plaintiffs claim that, for their institutional negligence claim against Signature, they only "seek to apply well-established law regarding the liability of a parent company under the facts in this case." (Dkt. 189 at 25.) Plaintiffs do not cite to any such "well-established law." Nor could they, as Illinois courts have not imposed a duty on parent corporations to assume responsibility for patients under the care of their subsidiaries. Plaintiffs' allegations do not allow for any inference that Signature had a role in providing their healthcare, such that a duty would be imposed on it. Regardless, this Court cannot "expand the law of a state in a manner that . . . is not *clearly* in line with the state's existing thinking on the subject," *Johnson v. Cook Cnty.*, 526 F. App'x 692, 697 (7th Cir. 2013) (internal citation and quotation marks omitted).

### D. Plaintiffs' *Respondeat Superior* Claims Are Inadequately Plead.

Plaintiffs have not adequately stated *respondeat superior* claims against either defendant. They do not allege valid tort claims against the individual Chicago Lakeshore defendants or allege that those defendants acted within the scope of employment.[9]

As an initial matter, plaintiffs have not alleged any tort claims against any agents or employees of Signature and again ask the Court to bridge the liability gap between Signature and

---

[8] To the extent *Young v. United States* holds a complaint cannot be dismissed for failure to comply with 735 ILCS 5/2-622, 942 F.3d 349, 351 (7th Cir. 2019), it does not hold that § 622 does not apply at all in federal court. Plaintiffs are "on notice of the need for an affidavit and report." *Id.* at 352.

[9] Plaintiffs appear to suggest Signature and Chicago Lakeshore may be liable under *respondeat superior* for the § 1983 violations alleged against the individual Chicago Lakeshore defendants. Seventh Circuit law is clear that "[r]*espondeat superior* liability does not apply to private corporations under § 1983," *Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014), so the "multiple constitutional violations" plaintiffs refer to are irrelevant to Signature and Chicago Lakeshore's *respondeat superior* liability.

the employees of its alleged subsidiary. (Dkt. 189 at 27.) But, contrary to plaintiffs' argument, their allegations that "Signature controlled and directed the conduct and activities of Chicago Lakeshore" do not allow for the "infer[ence] that Signature controlled the conduct of Chicago Lakeshore *employees*." (*Id.* (emphasis added).) Whether an employment relationship exists under Illinois law depends on several factors relating to the direct relationship between the would-be employer and employee, e.g., who has the right to control the employee's work, who pays the employee, and who can terminate the employee. *See Doe v. Boy Scouts of Am.*, 4 N.E.3d 550, 560 (Ill. App. Ct. 2014) (finding no indication that national organization had "right to control the work" of employee of local council because the employee reported to local council). Plaintiffs' allegations do not suggest any relationship between Signature and the individual Chicago Lakeshore defendants. And thus, their *respondeat superior* claim against Signature should be dismissed on this basis alone. *See also Ames v. Ohle*, 219 So. 3d 396, 407 (La. Ct. App. 2017); *Wirth v. Sun Healthcare Grp., Inc.*, 389 P.3d 295, 305 (N.M. Ct. App. 2016) ("[W]e cannot locate any case anywhere . . . that has held that, absent veil-piercing, a parent corporation can be vicariously liable in tort as a simultaneous co-employer of its subsidiary's employees.").

Plaintiffs also fail to bring valid tort claims against any Chicago Lakeshore employees. In arguing they have done so, plaintiffs merely refer to their response to those defendants' motions to dismiss in which they regurgitate the conclusory statements set out in their complaint. (*See, e.g.*, Dkt. 190 at 24–26.)[10] Plaintiffs have not, and cannot, dispute that their IIED and civil

---

[10] Plaintiffs continue to rely on group pleading to convince the Court their intentional infliction of emotional distress ("IIED") allegations pass muster. (*See, e.g.*, Dkt. 190 at 24 ("Taken together, Plaintiffs allege that the Individual CLS Defendants engaged in extreme and outrageous conduct by: participating in, facilitating, condoning, covering up, or failing to present instances of sexual and physical abuse at the Hospital.")). This transparent reliance on collective conduct to state claims against each defendant not only fails to satisfy their pleading burden but further highlights that the allegations against these defendants are insufficient. *See Harrison v. Wexford Health Sources, Inc.*, No. 1:17-cv-01383, 2018 WL 659862, at *2–3, *8 (N.D. Ill. Feb. 1, 2018); *cf. Golbert v. Walker*, No. 18 C 8176, 2020 WL 1182670, at *4 (N.D. Ill. Mar. 12, 2020).

conspiracy claims suffer from fatal deficiencies: (1) allegations of deficient investigations or responses to sexual abuse complaints are insufficient to state an IIED claim under Illinois law (*see* Dkt. 161 at 27); (2) factual allegations showing the individual Chicago Lakeshore defendants' conduct was calculated to cause plaintiffs' emotional distress are absent (*id.* at 27–28); and (3) plaintiffs fail to allege a common scheme to inflict emotional distress on plaintiffs and knowing participation in the same by the individual Chicago Lakeshore defendants (*id.* at 28).

Finally, plaintiffs do not adequately allege the individual defendants acted within the scope of employment. Plaintiffs have not alleged that the individual defendants engaged in any misconduct for the benefit of Chicago Lakeshore or Signature or that the individuals were employed to conceal misconduct at the hospital. Instead, plaintiffs' allegations, which make clear that the individual Chicago Lakeshore employees were employed to care for patients (*e.g.*, FAC ¶¶ 33–39) and acting only to benefit themselves (*e.g.*, *id.* ¶¶ 78, 83), foreclose the very inferences they ask this Court to make. (*See* Dkt. 161 at 29–30.) Plaintiffs' allegations similarly undermine their assertion that the individual Chicago Lakeshore defendants "engaged in the conduct [at issue] with the goal of keeping the Hospital open to future DCFS children" (Dkt. 190 at 25). (*Compare, e.g.*, FAC ¶¶ 5, 62 (alleging defendants engaged in misconduct out of a motive to profit from DCFS patients), *with id.* ¶¶ 6, 116 (alleging the misconduct resulted in all DCFS patients being removed from the hospital and in the termination of Chicago Lakeshore's provider agreement with CMS).) Plaintiffs have pled themselves out of a *respondeat superior* claim.

Plaintiffs dispute that a "*per se* rule that sexual misconduct is never within the scope of one's employment . . . exists," based on "numerous federal courts in the Seventh Circuit." (Dkt. 189 at 28–29.) This assertion improperly brushes aside well-established *Illinois* law—which applies to plaintiffs' state-law *respondeat superior* claims—that "sexual [misconduct] *by its very*

17

*nature* precludes a conclusion that it occurred within the employee's scope of employment under the doctrine of *respondeat superior*." *Doe ex rel. Doe v. Lawrence Hall Youth Servs.*, 966 N.E.2d 52, 62 (Ill. App. Ct. 2012); *see also Richards v. U.S. Steel*, 869 F.3d 557, 565–66 (7th Cir. 2017) (citing *Doe*, 966 N.E.2d at 61–62); *Stern v. Ritz Carlton Chi.*, 702 N.E.2d 194, 198 (Ill. App. Ct. 1998); *Deloney v. Bd. of Educ. of Thornton Twp.*, 666 N.E.2d 792, 797–99 (Ill. App. Ct. 1996); *Randi F. v. High Ridge YMCA*, 524 N.E.2d 966, 968–69 (Ill. App. Ct. 1988); *Hoover v. Univ. of Chi. Hosps.*, 366 N.E.2d 925, 928–29 (Ill. App. Ct. 1977). The "numerous" federal cases cited by plaintiffs are not to the contrary. Five apply *Wisconsin* law.[11] The remaining cases involve sexual misconduct by police officers, which is a "critical distinction" under Illinois law. *Doe v. Clavijo*, 72 F. Supp. 3d 910, 916 (N.D. Ill. 2014) (noting "the scope of employment analysis . . . appl[ies] differently to police officers who commit sexual assaults").[12] Illinois law is clear that plaintiffs' *respondeat superior* claims against Signature and Chicago Lakeshore, which are premised on the alleged sexual misconduct of Schei and Kasyoki, fail.

#  #  #

To survive a motion to dismiss, "[a]t a minimum, the plaintiff must plead enough facts 'to present a story that holds together.'" *Johnson v. Cook Cnty. Sheriff's Off.*, No. 16 C 07523, 2018 WL 2193235, at *2 (N.D. Ill. May 14, 2018) (quoting *Catinella v. Cnty. of Cook, Ill.*, 881 F.3d

---

[11] *See Lemons v. City of Milwaukee*, No. 13-C-0331, 2016 WL 3746571, at *23–24 (E.D. Wis. July 8, 2016); *Carney v. White*, 843 F. Supp. 462, 479–80 (E.D. Wis. 1994); *Rankins v. Howard*, No. 11-CV-1153-JPS, 2012 WL 5932029, at *3 (E.D. Wis. Nov. 27, 2012); *Estate of Watts v. Heine*, No. 07-CV-644, 2008 WL 4058032, at *3–5 (E.D. Wis. Aug. 26, 2008); Transcript of Oral Argument at 13, *Nealy v. Nelson,* No. 11-C-541 (E.D. Wis. Jan. 6, 2014), ECF No. 168. The Seventh Circuit abrogated *Estate of Watts*, and in doing so, it noted that "Wisconsin law . . . does not go so far" as Illinois law, under which "sexual assault categorically is never within the scope." *Martin v. Milwaukee Cnty.*, 904 F.3d 544, 556–57 (7th Cir. 2018).

[12] *See also Doe v. Roe*, No. 12 C 9213, 2013 WL 2421771, at *4–5 (N.D. Ill. June 3, 2013); *Doe v. Lee*, 943 F. Supp. 2d 870, 880 (N.D. Ill. 2013); *Arias v. Allegretti*, No. 05-cv-5940, 2008 WL 191185, at *5–6 (N.D. Ill. Jan. 22, 2008).

514, 517 (7th Cir. 2018)). Under scrutiny, plaintiffs' story as to Signature and Chicago Lakeshore's liability quickly falls apart, and no cause of action against them remains standing.

## CONCLUSION

Plaintiffs' claims against Signature and Chicago Lakeshore should be dismissed with prejudice.

Dated: November 20, 2020

Respectfully submitted,

/s/ *Craig C. Martin*

| | |
|---|---|
| Michael E. Prangle (mprangle@hpslaw.com) | Craig C. Martin (cmartin@willkie.com) |
| Sabina Babel (sbabel@hpslaw.com) | Laura L. Norris (lnorris@willkie.com) |
| Matthew J. Kaminski (mkaminski@hpslaw.com) | WILLKIE FARR & GALLAGHER |
| Daria Porta (dporta@hpslaw.com) | 300 North LaSalle, Suite 5000 |
| HALL PRANGLE & SCHOONVELD LLC | Chicago, Illinois 60654 |
| 200 South Wacker Drive, Suite 3300 | Tel: (312) 728-9000 |
| Chicago, Illinois 60606 | |
| Tel: (312) 345-9600 | |

*Counsel for Defendants Signature Healthcare Services, LLC & Aurora Chicago Lakeshore Hospital, LLC*

19

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5 and Northern District of Illinois Local Rule 5.5, the undersigned, an attorney of record in this case, hereby certifies that, on November 20, 2020, a true and correct copy of **Signature Healthcare Services, LLC and Aurora Chicago Lakeshore Hospital, LLC's Reply in Support of Their Motion to Dismiss Plaintiffs' First Amended Complaint Under Rule 12(b)(6)** was filed electronically by CM/ECF, which caused notice to be sent to all counsel of record.


Dated: November 20, 2020                    By: /s/ *Laura L. Norris*

                                            Laura L. Norris
                                            WILLKIE FARR & GALLAGHER LLP
                                            300 North LaSalle, Suite 5000
                                            Chicago, Illinois 60654
                                            Tel: (312) 728-9000

                                            *Attorney for Defendants Signature Healthcare*
                                            *Services, LLC & Aurora Chicago Lakeshore*
                                            *Hospital, LLC*