## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| CHARLES GOLBERT, Cook County Public Guardian, on behalf of Trinity B., Romeo S., Connor H., Jadiene T., Jymesha S., Tatyana H., and Jamya B., | |
| Plaintiffs, | Case No. 19-cv-08257 |
| | Judge Mary M. Rowland |
| v. | |
| AURORA CHICAGO LAKESHORE HOSPITAL, LLC, *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Charles Golbert, acting on behalf of minors Trinity B., Romeo S., Connor H., Jadiene T., Jymesha S., Tatyana H., and Jamya B., brings this action against the Defendants alleging federal and state law violations arising from the children's time at Chicago Lakeshore Hospital. Defendant Eve Brownstone moves to dismiss the Amended Complaint for failing to state a claim. For reasons stated herein, her Motion to Dismiss [138] is granted in full. All dismissals are without prejudice.

### I. Background

The following factual allegations are taken from the Amended Complaint (Dkt. 135) and are accepted as true for the purposes of the motion to dismiss. *See W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

### A. The Lakeshore Allegations

1

Charles Golbert brings this suit against Aurora Chicago Lakeshore Hospital, Lakeshore's parent company Signature, several employees and executives of Lakeshore, and several officers and employees of DCFS, in their personal capacity. Golbert is the Cook County Public Guardian. Appointed by the Chief Judge of the Cook County Circuit Court and the Presiding Judge of the Juvenile Justice and Child Protection Division of the Circuit Court, he represents children who are subjects of abuse, neglect, and dependency petitions filed in the juvenile court. Dkt. 135 ¶ 11. In this case, he represents seven children who were in DCFS custody and were involuntarily placed in the Chicago Lakeshore Hospital between 2017 and 2018. *Id.* at ¶¶ 12-18, 66.

Chicago Lakeshore Hospital is an Illinois limited liability company located in Chicago, where it also operates a "Children's Pavilion." *Id.* at ¶ 19. Lakeshore is in turn owned by Signature, a Michigan limited liability company. *Id.* Along with Lakeshore and Signature, Golbert lists ten other executives and employees of Lakeshore as defendants. *Id.* at ¶¶ 23, 31-39. He also brings suit against nine officials and employees of DCFS, the Illinois agency responsible for the care of children dependent on the state. *Id.* at ¶¶ 21-22, 24-29, 30, 40.

Golbert's allegations arise from the plaintiffs' treatment while at Lakeshore's children's hospital. DCFS is required to house children in the least restrictive setting that is in the child's best interest. *Id.* at ¶ 41. As part of this care, children sometimes needed inpatient care at a psychiatric hospital. *Id.* at ¶ 42. Due to budget constraints, DCFS had developed a reputation among Chicago-area hospitals for keeping children

in inpatient care for longer than medically beneficial and failing to promptly pay hospitals for care provided. *Id.* at ¶ 47-48. As a result, most psychiatric hospitals were hesitant to admit children in the care of DCFS. *Id.* at ¶ 49.

The one exception was Lakeshore. Due to its own financial pressures, it readily accepted receive children in the care of DCFS. *Id.* at ¶ 62. As a result of Lakeshore's limited funds and aggressive management by Signature, its children's psychiatric hospital lacked the proper facilities and staff to safely operate. *Id.* at ¶¶ 51-58. Lakeshore had a history of allegations of inadequate or dangerous care, including a 2011 report by the Mental Health Policy Program of the University of Illinois at Chicago finding patterns of sexual abuse. *Id.* at ¶¶ 119, 121. DCFS, however, was dependent on Lakeshore because it was one of the few hospitals that would accept children in its charge. *Id.* at ¶ 64. As a result, DCFS wanted to ensure that Lakeshore remained in business even if it did not provide adequate care. *Id.*

During their stay at Lakeshore, the plaintiffs were subjected to serious sexual, physical, and emotional abuse. *Id.* at ¶ 67. DCFS was aware of serious complaints against Lakeshore and worked to bury and discredit the allegations. *Id.* at ¶ 104. The situation only changed in 2018 when the federal Department of Health and Human Services surveyed Lakeshore to evaluate its compliance with Medicare regulations. *Id.* at ¶ 114. The surveys found that Lakeshore's administration of the children's hospital violated federal regulations and endangered patient health and safety. *Id.* at ¶ 115. As a result, the Department terminated its provider agreement with the

3

hospital, cutting off federal funding. *Id.* at ¶ 125. DCFS removed all the children in its custody out of Lakeshore at around the same time. *Id.* at ¶ 125.

The abuse the children suffered at Lakeshore continues to cause them physical and emotional pain. *Id.* at ¶ 130. Golbert filed the instant lawsuit on December 18, 2019 to recover for the damage caused.

### B. Eve Brownstone

Eve Brownstone has filed a motion to dismiss Golbert's Complaint as it applies to her. At the time relevant to the Complaint, Brownstone worked at Lakeshore as a therapist. *Id.* at ¶ 37. Jymesha S. was a 12-year-old minor in DCFS custody who had been placed in Lakeshore. *Id.* at ¶ 16. Richard Kasyoki, another employee of Lakeshore, made inappropriate sexual comments to Jymesha S. *Id.* at ¶ 83. Brownstone was present when Kasyoki made the comments and is alleged to have heard them. *Id.* Brownstone did not intervene to stop Kasyoki and she did not report his comments, despite having a duty to do so. *Id.* When questioned by DCFS investigators about Kasyoki, Brownstone provided evasive answer in order to cover up his actions. *Id.* Kasyoki subsequently sexually assaulted Jymesha S. *Id.* at ¶ 77.

### II.   Standard

A motion to dismiss tests the sufficiency of a complaint, not the merits of the case. *Gibson v. City of Chi.,* 910 F.2d 1510, 1520 (7th Cir. 1990). "To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC,* 887 F.3d 329,

333 (7th Cir. 2018) (quotations and citation omitted). *See also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."). A court deciding a Rule 12(b)(6) motion accepts plaintiff's well-pleaded factual allegations as true and draws all permissible inferences in plaintiff's favor. *Fortres Grand Corp. v. Warner Bros. Entm't Inc.,* 763 F.3d 696, 700 (7th Cir. 2014). A plaintiff need not plead "detailed factual allegations", but "still must provide more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action for her complaint to be considered adequate under Federal Rule of Civil Procedure 8." *Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016) (citation and internal quotation marks omitted).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558, 127 S. Ct. 1955, 1966 (2007). Deciding the plausibility of the claim is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 679, 129 S. Ct. 1937, 1950 (2009)).

### III.   Analysis

In her Motion to Dismiss, Brownstone argues that the Complaint fails to state a federal or state law claim against her.

### A. The Complaint Does Not State a Safe-Conditions Claim

Count One alleges violations of the plaintiffs' right to safe conditions of confinement. The courts have long recognized that the Fourteenth Amendment guarantees involuntarily-committed individuals a right to safe conditions of confinement. *See Youngberg v. Romeo*, 457 U.S. 307, 315 (1982). To evaluate whether the right to safe conditions has been violated, the parties agree that a deliberate indifference standard is appropriate. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference requires a defendant's awareness of a risk of harm to an involuntarily-committed individual which she then disregards with deliberate indifference. *Id.*

Golbert alleges that Brownstone violated Jymesha S.'s right to safe confinement. He contends that Kasyoki making inappropriate sexual comments to Jymesha S. signaled that he was grooming the patient for a future sexual act. This was evidence that Jymesha S. faced a high risk of sexual assault. Because Brownstone heard the comments, she was aware of this danger, but she failed to report Kasyoki or otherwise protect Jymesha S.

The Court is unpersuaded, however, that hearing a person make "inappropriate sexual comments" to a minor a single time is enough to suggest the minor faces a significant risk of sexual assault. Courts have found that, in the school context, overhearing or being informed of isolated sexual comments between teachers and students is not enough to impute actual knowledge that the student was at risk of sexual assault. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 118 S. Ct. 1989, 141 L. Ed. 2d 277 (1998); *Doe v. Flaherty*, 623 F.3d 577 (8th Cir. 2010). And

none of the plaintiff's allegations or citations suggest that a therapist who failed to anticipate a sexual assault in that context necessarily abandoned her professional judgement. *See B.H. v. Johnson*, 715 F. Supp. 1387, 1395-96 (N.D. Ill. 1989).

Of course, a school is a different context from an inpatient psychiatric hospital. But the Complaint nevertheless fails to demonstrate that Brownstone was deliberately indifferent to the Jymesha S.'s risk. While "inappropriate sexual comments" are always, by definition, inappropriate, the phrase encompasses a wide range of possible statements. Some of these statements would put an observer on notice as to future risk, while others, on their own, would not. At the motion to dismiss stage, the Court draws reasonable inferences in the plaintiff's favor. But it will not replace the Complaint's allegations with more nefarious ones. The Complaint's single incident involving Brownstone is insufficient to show she was deliberately indifferent to Jymesha S., and so it fails to state an unsafe-conditions claim.

### B. Count Two Fails to State an Access-to-Court Claim

Golbert's next claim is that Brownstone violated the plaintiffs' constitutional right to access the courts. A backward-looking access claim may arise "'where a plaintiff alleges an underlying claim cannot be tried, or be tried with all the evidence, because official conduct caused the loss or inadequate resolution of that claim.'" *Harer v. Casey*, 962 F.3d 299, 308 (7th Cir. 2020) (quoting *Lynch v. Barrett*, 703 F.3d 1153, 1157 (10th Cir. 2013)). In order "[t]o determine whether a plaintiff has meaningful and effective access to court, we require the plaintiff to identify: (1) a nonfrivolous, underlying claim; (2) the official acts frustrating the litigation; and (3) a remedy that

may be awarded as recompense but that is not otherwise available in a suit or settlement." *Id*. The third prong is particularly problematic when plaintiffs bring an access-to-court claim based on lack of evidence alongside underlying claims. This is because it is "just too early to say" whether remedy is not otherwise available. *Id*. at 309 (quotation omitted). For this reason, "an access-to-court claim ordinarily may not proceed at the same time and in the same case as a timely-filed underlying claim." *Id*.

In *Harer*, a couple alleged that their daughter's murder by a police officer had been covered up by the police department. *Id*. at 302. As a result of the cover-up, evidence that would have been helpful in a lawsuit against the police officer and department was not available. *Id*. at 308. They sued the officer and department for claims including wrongful death, intentional infliction of emotional distress, and denial of access to the court. *Id*. at 305. The Seventh Circuit dismissed the parents' access-to-court claim because "their underlying tort claims [were] timely, facially plausible, and still pending." *Id*. at 310. So long as "the ultimate resolution of their wrongful death case in doubt, the Harers' access-to-court claim [was] not ripe for judicial review." *Id*. at 310-11. With the underlying claims still pending, the court could not "determine whether the police cover-up thwarted the effectiveness of any potential remedies." *Id*. at 311.

Golbert argues that the plaintiffs have been denied access to the court because of actions taken by the defendants to hide or destroy relevant evidence. *Harer* is analogous to the instant case. Here too, Golbert has "timely, facially plausible" claims

for relief pending before the Court, despite the lack of video evidence. As a result, he cannot show that no remedy is otherwise available. Here, as in *Harer*, "[t]he filing of [the] case undermines the argument that an individual lacks access to court." *Id.* at 309.

Golbert attempts to distinguish *Harer* by pointing to dicta mentioning that the parents could use discovery to find evidence that supports their case. *See Id.* He contrasts this with the present case, where discovery will not uncover evidence already destroyed or never created. But *Harer*'s discussion of discovery only serves to point out that the plaintiffs may well find enough information in discovery to succeed at trial, not that they have a right to any particular piece of evidence. And, of course, the same is true here. Golbert will have access to discovery and, while he will not uncover evidence that was destroyed, the Court cannot determine that he has no recourse until it reaches a ruling on the underlying claims. Count Two is dismissed.

### C. The Complaint Does Not State a Failure-to-Intervene Claim

We turn now to the Complaint's third claim, that Brownstone failed to intervene to prevent the violation of the plaintiffs' constitutional rights. State actors who fail to intervene may be liable under § 1983 when the individual "had reason to know" that "any constitutional violation has been committed . . .; *and* [he] had a realistic opportunity to intervene to prevent the harm from occurring." *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). The Complaint raises two possible grounds for bringing this claim against Brownstone: failing to intervene before Kasyoki made

9

inappropriate sexual comments; and failing to intervene before Kasyoki sexually assaulted Jymesha S.

The Complaint does not state a claim based on the sexual comments. For one, it is unclear whether the comments amounted to a constitutional violation. More importantly, however, the facts alleged do not suggest that Brownstone had any opportunity to intervene to prevent Kasyoki from making them. Brownstone likely did have an opportunity to intervene to prevent the sexual assault. If she had reported the sexual comments to the appropriate authorities, it is possible that Kasyoki would have been barred from being alone with Jymesha S. before the assault occurred. As discussed with the first count, however, a single incident of sexual comments is not enough to signal an imminent sexual assault. This ground fails on the first prong—Brownstone did not have reason to know of the sexual assault before it occurred. The Complaint thus fails to state a failure-to-intervene claim against Brownstone.

### D. The Complaint Does Not States a Claim for Intentional Infliction of Emotional Distress

Golbert also brings a state law claim for intentional infliction of emotional distress. There are three elements to such a claim under Illinois law. "First, the conduct involved must be truly extreme and outrageous. Second, the actor must . . . know that there is at least a high probability that his conduct will cause *severe* emotional distress. Third, the conduct must in fact cause severe emotional distress." *McGrath v. Fahey*, 126 Ill. 2d 78, 86, 533 N.E. 2d 806, 809 (1988). Brownstone has moved to dismiss the count.

10

Golbert alleges that Brownstone's behavior was extreme and outrageous because she demonstrated deliberate indifference to Jymesha S.'s risk of sexual abuse. But, as previously discussed, the facts alleged do not amount to deliberate indifference. It is also not alleged that Brownstone obstructed an investigation into Jymesha S.'s sexual assault. The Complaint does not suggest that Brownstone was aware of Kasyoki's assault. Instead, Brownstone witnessed Kasyoki make sexual comments to Jymesha S., failed to report the comments, and then provided evasive answers to investigators when asked about them. Dkt. 135 ¶ 83. Given that she did not have reason to suspect the risk of sexual assault, her actions, while disappointing and unprofessional, are not "extreme and outrageous." *See Piech v. Arthur Andersen & Co., S.C.*, 841 F. Supp. 825, 831 (N.D. Ill. 1994) ("A claim for intentional infliction of emotional distress . . . requires more than what is required for sexual harassment."). For the same reason, she did not know that her actions had a high probability of resulting in severe emotional distress. Given that the Complaint does not satisfy at least the first two prongs of an intentional infliction of emotional distress claim, the count is dismissed as to Brownstone.

### E. The Complaint Does Not Plead Conspiracy

Brownstone also seeks to dismiss Golbert's federal and state law conspiracy claims. To establish liability for a § 1983 conspiracy, "the plaintiff must show that (1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015). Similarly, a state law claim must allege

"(1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act." *Fritz v. Johnston*, 209 Ill. 2d 302, 317, 807 N.E.2d 461, 470 (2004). A conspiracy may arise from an implied agreement, and such an agreement may be inferred from the parties' acts when such actions are unlikely without an agreement. *Amundsen v. Chicago Park Dist.*, 218 F.3d 712, 718 (7th Cir. 2000).

Golbert does not allege a conspiracy involving Brownstone. Golbert provides no specific allegations suggesting any agreement between Brownstone and any of the other defendants. Brownstone witnessed Kasyoki making inappropriate sexual comments, but there are no allegations that she assisted Kasyoki in any way. Brownstone is alleged to have mislead DCFS investigators about overhearing Kasyoki's comments. Dkt. 135 ¶ 83. However, no allegations suggest that Brownstone collaborated with others in this cover up. This is in contrast to several of the other individual defendants, such as Kasyoki and Katsarov, Michaels and Dill, and Katsarov and Majekodunmi, who are alleged to have acted in concert to hide evidence of abuse. Without these specific connections, the Complaint's general allegations of a conspiracy are insufficient to state a claim as to Brownstone.

## IV.    Conclusion

For the stated reasons, Brownstone's Motion to Dismiss [138] is granted in full. All dismissals are without prejudice.

E N T E R:

Dated: March 11, 2021

_____
MARY M. ROWLAND
United States District Judge