IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHARLES GOLBERT, Cook County Public Guardian, on behalf of Trinity B., Romeo S., Connor H., Jadiene T., Jymesha S., Tatyana H., and Jamya B., <br><br>Plaintiffs, <br><br>v. <br><br>AURORA CHICAGO LAKESHORE HOSPITAL, LLC, *et al.*, <br><br>Defendants. | Case No. 19-cv-08257 <br><br>Judge Mary M. Rowland |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Charles Golbert, acting on behalf of minors Trinity B., Romeo S., Connor H., Jadiene T., Jymesha S., Tatyana H., and Jamya B., brings this action against the Defendants alleging federal and state law violations arising from the children's time at Chicago Lakeshore Hospital. Defendants Shane Michaels and Dion Dill move to dismiss the Amended Complaint for failing to state a claim. Michaels and Dill's motions deal with substantially the same factual allegations and legal arguments, and so are addressed jointly in this Opinion. For reasons stated herein, their Motions to Dismiss [144, 150] are granted in part and denied in part. They are granted in full as to Count Two. They are granted as to Count One, Three, Four, Eleven and Fourteen for all plaintiffs other than Tatyana H. All dismissals are without prejudice.

1

I. Background

The following factual allegations are taken from the Amended Complaint (Dkt. 135) and are accepted as true for the purposes of the motion to dismiss. *See W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

### A. The Lakeshore Allegations

Charles Golbert brings this suit against Aurora Chicago Lakeshore Hospital, Lakeshore's parent company Signature, several employees and executives of Lakeshore, and several officers and employees of DCFS, in their personal capacity. Golbert is the Cook County Public Guardian. Appointed by the Chief Judge of the Cook County Circuit Court and the Presiding Judge of the Juvenile Justice and Child Protection Division of the Circuit Court, he represents children who are subjects of abuse, neglect, and dependency petitions filed in the juvenile court. Dkt. 135 ¶ 11. In this case, he represents seven children who were in DCFS custody and were involuntarily placed in the Chicago Lakeshore Hospital between 2017 and 2018. *Id.* at ¶¶ 12-18, 66.

Chicago Lakeshore Hospital is an Illinois limited liability company located in Chicago, where it also operates a "Children's Pavilion." *Id.* at ¶ 19. Lakeshore is in turn owned by Signature, a Michigan limited liability company. *Id.* Along with Lakeshore and Signature, Golbert lists ten other executives and employees of Lakeshore as defendants. *Id.* at ¶¶ 23, 31-39. He also brings suit against nine officials and employees of DCFS, the Illinois agency responsible for the care of children dependent on the state. *Id.* at ¶¶ 21-22, 24-29, 30, 40.

Golbert's allegations arise from the plaintiffs' treatment while at Lakeshore's children's hospital. DCFS is required to house children in the least restrictive setting that is in the child's best interest. *Id.* at ¶ 41. As part of this care, children sometimes needed inpatient care at a psychiatric hospital. *Id.* at ¶ 42. Due to budget constraints, DCFS had developed a reputation among Chicago-area hospitals for keeping children in inpatient care for longer than medically beneficial and failing to promptly pay hospitals for care provided. *Id.* at ¶ 47-48. As a result, most psychiatric hospitals were hesitant to admit children in the care of DCFS. *Id.* at ¶ 49.

The one exception was Lakeshore. Due to its own financial pressures, it readily accepted children in the care of DCFS. *Id.* at ¶ 62. As a result of Lakeshore's limited funds and aggressive management by Signature, its children's psychiatric hospital lacked the proper facilities and staff to safely operate. *Id.* at ¶¶ 51-58. Lakeshore had a history of allegations of inadequate or dangerous care, including a 2011 report by the Mental Health Policy Program of the University of Illinois at Chicago finding patterns of sexual abuse. *Id.* at ¶¶ 119, 121. DCFS, however, was dependent on Lakeshore because it was one of the few hospitals that would accept children in its charge. *Id.* at ¶ 64. As a result, DCFS wanted to ensure that Lakeshore remained in business even if it did not provide adequate care. *Id.*

During their stay at Lakeshore, the plaintiffs were subjected to serious sexual, physical, and emotional abuse. *Id.* at ¶ 67. DCFS was aware of serious complaints against Lakeshore and worked to bury and discredit the allegations. *Id.* at ¶ 104. The situation only changed in 2018 when the federal Department of Health and Human

3

Services surveyed Lakeshore to evaluate its compliance with Medicare regulations. *Id.* at ¶ 114. The surveys found that Lakeshore's administration of the children's hospital violated federal regulations and endangered patient health and safety. *Id.* at ¶ 115. As a result, the Department terminated its provider agreement with the hospital, cutting off federal funding. *Id.* at ¶ 125. DCFS removed all the children in its custody out of Lakeshore at around the same time. *Id.* at ¶ 125.

The abuse the children suffered at Lakeshore continues to cause them physical and emotional pain. *Id.* at ¶ 130. Golbert filed the instant lawsuit on December 18, 2019 to recover for the damage caused.

### B. Shane Michaels and Dion Dill

Shane Michaels and Dion Dill have filed motions to dismiss Golbert's Complaint as it applies to them. At the time relevant to the Complaint, Dill and Michaels both worked for Lakeshore, assisting in overseeing patients. *Id.* at ¶ 38. Tatyana H. was a 7-year-old minor in DCFS custody who had been placed in Lakeshore. *Id.* at ¶ 17. In 2018, Tatyana H. was sexually assaulted by another patient. *Id.* at ¶ 87. Michaels and Dill were on-duty at the time of her assault and were responsible for supervising her. *Id.* at ¶ 89. They knew about her assault and took steps to cover it up. *Id.* Instead of reporting the assault, as required by law, they misled investigators to make it appear that the abuse had not occurred. *Id.*

### II. Standard

A motion to dismiss tests the sufficiency of a complaint, not the merits of the case. *Gibson v. City of Chi.,* 910 F.2d 1510, 1520 (7th Cir. 1990). "To survive a motion to

4

dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quotations and citation omitted). *See also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."). A court deciding a Rule 12(b)(6) motion accepts plaintiff's well-pleaded factual allegations as true and draws all permissible inferences in plaintiff's favor. *Fortres Grand Corp. v. Warner Bros. Entm't Inc.,* 763 F.3d 696, 700 (7th Cir. 2014). A plaintiff need not plead "detailed factual allegations", but "still must provide more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action for her complaint to be considered adequate under Federal Rule of Civil Procedure 8." *Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016) (citation and internal quotation marks omitted).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558, 127 S. Ct. 1955, 1966 (2007). Deciding the plausibility of the claim is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 679, 129 S. Ct. 1937, 1950 (2009)).

### III. Analysis

In their Motions to Dismiss, Michaels and Dill argue that they are not state actors liable under § 1983; that Golbert has failed to allege their personal involvement in constitutional violations; and that the Complaint fails to state a claim against them.

#### A. Michaels and Dill Are State Actors

Ordinarily, private actors such as Lakeshore cannot be held liable for constitutional violations under § 1983. *See Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 815 (7th Cir. 2009). There is an exception, however, when a private party engages in "state action." *Id.* To find state action, there must be a "close nexus between the State and the challenged action" such that the challenged action "may be fairly treated as that of the State itself." *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974). The Supreme Court has recognized several different ways in which private action may become state action. These include when the action is a result of a conspiracy between the state and private party to deprive individuals of their constitutional rights; when the state practically controls or directs the private entity; and when the state has delegated a public function to the private entity. *Hallinan*, 570 F.3d at 815-16 (gathering Supreme Court cases). At the same time, the Court is aware that these examples "do not so much enunciate a test or series of factors, but rather demonstrate examples of outcomes in a fact-based assessment." *Id.* at 816. Indeed, "no one fact can function as a necessary condition across the board for finding state action; nor is any set of circumstances absolutely

6

sufficient." *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295, (2001).

In this case, the analysis turns on whether Lakeshore was performing a "public function" by treating the children in DCFS custody. To make this determination, we ask "whether the function performed has been 'traditionally the *exclusive* prerogative of the State.'" *Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982) (quoting *Jackson*, 419 U.S. at 353). Michaels and Dill argue that Lakeshore did not perform a function that was traditionally exclusive to Illinois. In support, they point to precedent from this district stating that "it is not the exclusive function of the State to care for and protect minors who are adjudicated to be abused and neglected by their natural parents." *Letisha A. by Murphy v. Morgan*, 855 F. Supp. 943, 949 (N.D. Ill. 1994).

The defendants, however, misstate the "function" that Lakeshore allegedly undertook. The relevant issue here is not whether protecting abused minors is an exclusive state function, but whether providing medical care to children already in DCFS custody is a traditionally exclusive state function. We have found no case directly addressing this question, but our precedent in *Woods v. Maryville Academy* strongly suggests that it would qualify. No. 17 C 8273, 2018 WL 6045219 (N.D. Ill. Nov. 19, 2018). In that case, which found a residential facility that abused DCFS children to be a state actor, the court emphasized DCFS's responsibility for children in its custody, writing that "if a state has a duty to the children in its custody, that duty cannot be avoided by substituting private for public custodians." *Id.* at *7. DCFS's duty to ensure its children's safety means that "a private institution should

7

not be able to avoid the underlying duty to protect and care for the children in its care and custody." *Id.* In effect, "the [defendants] fulfilled the State's duty to care for the children in its custody. That is what makes them state actors." *Id.* at *8. Here too, Lakeshore was fulfilling the State's duty to provide care for its children.

Lakeshore's status as a state actor is reinforced by considering the closely analogous case of medical care provided to state prisoners. In *Rodriguez v. Plymouth Ambulance Serv.*, the Seventh Circuit found that a hospital that treated an inmate over the course of several days was fulfilling an exclusive state function and so could be sued as a state actor. 577 F.3d 816 (7th Cir. 2009). In its analysis, the court contrasted care that was "incidental and transitory," such as treating an ambulance arrival in need of emergency care, with that arising from an ongoing, contractual relationship. In only the latter case are a hospital and its employees "undertaking freely, and for consideration, responsibility for a specific portion of the state's overall obligation." *Id.* at 827. The Seventh Circuit found the defendant hospital participated in an exclusive state function, and so was a state actor, when it treated a prisoner over the course of several days as part of an ongoing relationship between it and the prison. *Id.* at 831.

In this case, Golbert has alleged that DCFS's children made up a substantial proportion of Lakeshore's child patients during the relevant time. Dkt. 135 ¶ 63. Hospitals were free not to treat DCFS children, and many chose not to. *Id.* at ¶ 49. Lakeshore, meanwhile, actively sought out DCFS children and continued their hospitalizations for extended periods. *Id.* at ¶ 62. Plaintiffs have alleged that

8

Lakeshore's treatment of them "was tied to the state's responsibility for [their] overall medical care." Michaels and Dill, as Lakeshore's employees, similarly took on the state's responsibility. *See Rodriguez*, 577 F.3d at 827.

Michaels and Dill argue that Lakeshore's relationship with the children was "incidental and transitory" under *Rodriguez*. But, as noted, in *Rodriguez* the "incidental" treatment was one where an ambulance arrived, unsolicited, at a hospital and the hospital provided emergency treatment and transferred the patient within an hour. *Id.* at 831. This was contrasted with the situation where the same prisoner was transferred to another hospital that had a contractual relationship to provide care to prisoners and treated for several days. *Id.* Here, Lakeshore, and by extension the defendants, took on a traditionally exclusive state function in their treatment of the DCFS children. As a result, they are state actors potentially liable under § 1983.

### B. Michaels and Dill's Personal Involvement

Michaels and Dill next argue that Golbert has not adequately alleged their personal involvement in the constitutional violations of six of the seven plaintiffs. In order to make out a claim under § 1983, the plaintiff must show the defendant's "personal involvement" in the alleged violation. *Matthews v. City of E. St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012). Michaels and Dill say the Complaint fails to allege their involvement as to any of the plaintiffs except for Tatyana H., and so the four constitutional counts should be dismissed as to the other plaintiffs. Golbert, in turn, argues that the specific allegations levelled against the defendants also imply a

9

general awareness of ongoing abuse. This awareness, he contends, is sufficient to plead their personal involvement as to all the plaintiffs.

The Court need not resolve this disagreement as to the counts generally. As we will see, each of the constitutional claims must be dismissed or is limited to Tatyana H. We consider the validity of each count, including the defendants' personal involvement, separately.

### C. Only Tatyana H. States a Safe-Conditions Claim

Golbert's first count is for violations of the plaintiffs' right to safe conditions of confinement. The courts have long recognized that the Fourteenth Amendment guarantees involuntarily-committed individuals a right to safe conditions of confinement. *See Youngberg v. Romeo*, 457 U.S. 307, 315 (1982). In order to make out the claim, the plaintiffs must show that they "suffered a sufficiently serious deprivation" and that Michaels and Dill were deliberately indifferent to their condition. *Sain v. Wood*, 512 F.3d 886, 894 (7th Cir. 2008). Golbert has stated a claim against Michaels and Dill as to plaintiff Tatyana H. The sexual assault of the minor was a serious deprivation that the defendants consciously chose to cover-up.

Dill and Michaels have moved to dismiss the claim in so far as it is raised by the six other plaintiffs. Golbert did not contest this in his Response, and the Complaint makes no concrete allegations tying Dill and Michaels to the other plaintiffs. In so far as the other six plaintiffs assert safe-conditions claims against Michaels and Dill, they are dismissed. The claim raised by Tatyana H. may proceed.

### D. Count Two Fails to State an Access-to-Court Claim

Golbert's next claim is that Michaels and Dill violated the plaintiffs' constitutional right to access the courts. A backward-looking access claim may arise "'where a plaintiff alleges an underlying claim cannot be tried, or be tried with all the evidence, because official conduct caused the loss or inadequate resolution of that claim.'" *Harer v. Casey*, 962 F.3d 299, 308 (7th Cir. 2020) (quoting *Lynch v. Barrett*, 703 F.3d 1153, 1157 (10th Cir. 2013)). In order "[t]o determine whether a plaintiff has meaningful and effective access to court, we require the plaintiff to identify: (1) a nonfrivolous, underlying claim; (2) the official acts frustrating the litigation; and (3) a remedy that may be awarded as recompense but that is not otherwise available in a suit or settlement." *Id*. The third prong is particularly problematic when plaintiffs bring an access-to-court claim based on lack of evidence alongside underlying claims. This is because it is "just too early to say" whether remedy is not otherwise available. *Id.* at 309 (quotation omitted). For this reason, "an access-to-court claim ordinarily may not proceed at the same time and in the same case as a timely-filed underlying claim." *Id.*

In *Harer*, a couple alleged that their daughter's murder by a police officer had been covered up by the police department. *Id.* at 302. As a result of the cover-up, evidence that would have been helpful in a lawsuit against the police officer and department was not available. *Id.* at 308. They sued the officer and department for claims including wrongful death, intentional infliction of emotional distress, and denial of access to the court. *Id.* at 305. The Seventh Circuit dismissed the parents' access-to-

11

court claim because "their underlying tort claims [were] timely, facially plausible, and still pending." *Id.* at 310. So long as "the ultimate resolution of their wrongful death case in doubt, the Harers' access-to-court claim [was] not ripe for judicial review." *Id.* at 310-11. With the underlying claims still pending, the court could not "determine whether the police cover-up thwarted the effectiveness of any potential remedies." *Id.* at 311.

Golbert argues that the plaintiffs have been denied access to the court because of actions taken by the defendants to hide or destroy relevant evidence. *Harer* is analogous to the instant case. Here too, Golbert has "timely, facially plausible" claims for relief pending before the Court, despite the lack of video evidence. As a result, he cannot show that no remedy is otherwise available. Here, as in *Harer*, "[t]he filing of [the] case undermines the argument that an individual lacks access to court." *Id.* at 309.

Golbert attempts to distinguish *Harer* by pointing to dicta mentioning that the parents could use discovery to find evidence that supports their case. *See Id.* He contrasts this with the present case, where discovery will not uncover evidence already destroyed or never created. But *Harer*'s discussion of discovery only serves to point out that the plaintiffs may well find enough information in discovery to succeed at trial, not that they have a right to any particular piece of evidence. And, of course, the same is true here. Golbert will have access to discovery and, while he will not uncover evidence that was destroyed, the Court cannot determine that he has no

12

recourse until it reaches a ruling on the underlying claims. Count Two is dismissed as to Dill and Michaels.

### E. The Complaint States a Failure to Intervene Claim

We turn now to the Complaint's third claim, that Michaels and Dill failed to intervene to prevent the violation of the plaintiffs' constitutional rights. State actors who fail to intervene may be liable under § 1983 when the individual knew that "any constitutional violation has been committed . . .; *and* [he] had a realistic opportunity to intervene to prevent the harm from occurring." *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). The Complaint alleges that Michaels and Dill were on duty and responsible for Tatyana H. at the time she was assaulted, but provides no particular allegations connecting them to any of the other plaintiffs. The Complaint does not allege that Michaels and Dill, specifically, were aware of any of the other plaintiffs or that they had an opportunity to intervene to prevent their abuse. And so, they have moved to dismiss the count as to the six other plaintiffs.

The Complaint and Golbert's Response contain general statements about the failure of the "Individual Defendants" to intervene, but they do not specify which defendants are allegedly liable to which plaintiffs. Reading the Complaint as a whole, it states a claim against Michaels and Dill as to Tatyana H., but not the other defendants. In so far as Golbert sought to bring failure-to-intervene claims on behalf of the six other defendants against Michaels and Dill, they are dismissed. Count Three survives as to Tatyana H.

13

### F. The Complaint States a Claim for Intentional Infliction of Emotional Distress

Golbert also brings a state law claim for intentional infliction of emotional distress. There are three elements to such a claim under Illinois law. "First, the conduct involved must be truly extreme and outrageous. Second, the actor must . . . know that there is at least a high probability that his conduct will cause *severe* emotional distress. Third, the conduct must in fact cause severe emotional distress." *McGrath v. Fahey*, 126 Ill. 2d 78, 86, 533 N.E. 2d 806, 809 (1988). Michaels and Dill have moved to dismiss the count.

The Complaint suggests that the claim against Michaels and Dill is only brought on behalf of Tatyana H., Dkt. 135 ¶ 200(e), and the defendants focus on Tatyana H.'s claim. They argue that alleging a deficient investigation into a sexual assault is not enough to state a claim for intentional infliction of emotional distress. For support, they cite to caselaw stating that "investigations of and action to correct alleged misconduct can be expected to take time and to not necessarily result in an outcome satisfactory to the complaining party." *Krumlauf v. Benedictine Univ.*, No. 09C7641, 2010 WL 1418579, at *2 (N.D. Ill. Apr. 7, 2010). In *Krumlauf* and the other cases cited, however, the court dismissed a claim that was based on the defendant's failure to adequately investigate a harm. *See also*, *Wilson-Trattner v. Campbell*, 863 F.3d 589, 597 (7th Cir. 2017); *Giraldi v. Lamson*, 205 Ill. App. 3d 1025, 1029, 563 N.E.2d 956, 960 (1990). The allegation against Michaels and Dill, meanwhile, is that they took proactive steps to cover up the assault, including by misleading investigators.

14

At this stage in the proceedings, active obfuscation is different from negligent investigation. Drawing all reasonable inferences in favor of the plaintiffs, this conduct is likely to cause severe emotional distress. The Complaint further alleges that Tatyana H. did, in fact, suffer emotional trauma. Dkt. 135 ¶ 6. Golbert has stated a claim on behalf of Tatyana H. In so far as the count is brought on behalf of the other plaintiffs, it is dismissed.

### G. The Complaint Adequately Pleads Conspiracy

Michaels and Dill also seek to dismiss Golbert's federal and state law conspiracy claims. To establish liability for a § 1983 conspiracy, "the plaintiff must show that (1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015). Similarly, a state law claim must allege "(1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act." *Fritz v. Johnston*, 209 Ill. 2d 302, 317, 807 N.E.2d 461, 470 (2004). A conspiracy may arise from an implied agreement, and such an agreement may be inferred from the parties' acts when such actions are unlikely without an agreement. *Amundsen v. Chicago Park Dist.*, 218 F.3d 712, 718 (7th Cir. 2000).

Reading the Complaint "sensibly and as a whole," Golbert alleges that Michaels conspired with Dill to cover up the sexual assault of Tatyana H. *Engel v. Buchan*, 710 F.3d 698, 710 (7th Cir. 2013). In 2018, Tatyana H. was sexually assaulted by another

15

patient while under the supervision of Michaels and Dill. Dkt. 135 ¶¶ 87, 89. Michaels and Dill failed to report the assault as required and, instead, jointly worked to hide the incident and mislead investigators. *Id.* at ¶ 89. This cover-up facilitated the violation of Tatyana H.'s constitutional rights and the infliction of emotional distress. Golbert also alleges that individual defendants at Lakeshore conspired to hide evidence of ongoing abuse. *Id.* at ¶ 154. Drawing reasonable inferences for the plaintiffs, these allegations suggest an implied agreement between Michaels and Dill. *See Engel*, 710 F.3d at 709.

The defendants argue that the Complaint asserts a conspiracy but fails to provide enough detail to state a claim, such as who they each conspired with, the dates of the conspiracy, and its purpose. But as described above, such details are provided in the factual allegations. Dill and Michaels thus depend on a blinkered reading of the Complaint, artificially separating the assertions of the conspiracy count from the preceding detailed allegations.

Read as a whole, the Complaint adequately pleads constitutional and state law conspiracy claims against Dill and Michaels on Tatyana H.'s behalf. It does not, however, allege any facts suggesting the defendants' agreement to a conspiracy targeting any of the other plaintiffs. In so far as the Complaint brings conspiracy claims against Dill and Michaels on behalf of the other plaintiffs, they are dismissed.

## IV. Conclusion

For the stated reasons, Michaels and Dill's Motions to Dismiss [144, 150] are granted in part and denied in part. They are granted in full as to Count Two. They

16

granted as to Count One, Three, Four, Eleven, and Fourteen for all plaintiffs other than Tatyana H. All dismissals are without prejudice.

E N T E R:

Dated: March 11, 2021

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge