## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

CHARLES GOLBERT, Cook County
Public Guardian, on behalf of Trinity
B., Romeo S., Connor H., Jadiene T.,
Jymesha S., Tatyana H., and Jamya B.,
,

           Plaintiffs,

        v.

AURORA CHICAGO LAKESHORE
HOSPITAL, LLC, et al.

        Defendants.

Case No. 19-cv-08257

Judge Mary M. Rowland

## MEMORANDUM OPINION AND ORDER

Plaintiff Charles Golbert brings this suit on behalf of seven minors in the custody of the Illinois Department of Children and Family Services (DCFS), alleging that they experienced physical, sexual, and emotional abuse after DCFS involuntarily committed them to Chicago Lakeshore Hospital for psychiatric care. Plaintiffs have sued Chicago Lakeshore Hospital; its owner, Signature Healthcare Services LLC; and a host of other individuals affiliated with Chicago Lakeshore Hospital, Signature, and DCFS. [282]. This case comes before this Court on Defendants Signature's and Soon Kim's motions to dismiss the second amended complaint. [306]; [309]. For the reasons explained below, this Court denies Signature's motion [306] and denies Kim's motion [309].

## I. Background

In December 2019, Plaintiff Charles Golbert—on behalf of seven minors in the custody of DCFS—brought suit against Signature, Chicago Lakeshore Hospital, individual defendants formerly affiliated with Chicago Lakeshore Hospital, and employees of DCFS. [1]. After Plaintiffs amended their complaint in July 2020, [135], various Defendants moved to dismiss. Relevant here, this Court denied Signature Lakeshore Hospital's motion to dismiss, finding that Plaintiffs stated cognizable claims against them under 42 U.S.C. § 1983 pursuant to *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978) and under Illinois law for negligence, negligent hiring, retention, and training, and *respondeat superior* liability. *See Golbert v. Aurora Chi. Lakeshore Hosp., LLC*, No. 19-CV-08257, 2021 WL 952528 (N.D. Ill. Mar. 11, 2021).

Subsequently, Plaintiffs filed a second amended complaint, in which Plaintiffs, as more fulsomely discussed below: (1) name for the first time Dr. Soon Kim, Signature's sole member as a defendant; and (2) add additional allegations regarding Signature's corporate structure, Kim's responsibilities within Signature, and Signature's network of hospitals. *See* [282] ¶¶ 13, 53–70.

### A. Parties

Between 2017 and 2018, Plaintiffs Trinity B., Romeo S., Connor H., Jadiene T., Jymesha S., Tatyana H., and Jamya B. were in the custody of the Illinois Department of Children and Family Services (DCFS) and required psychiatric hospitalization. [282] ¶ 1. At relevant times, DCFS involuntarily placed these minor

Plaintiffs at the Children's Pavilion at Chicago Lakeshore Hospital (Children's Hospital). *Id.* ¶¶ 17–22. Plaintiff Charles Golbert is the Cook County Public Guardian and the guardian *ad litem* for the minor Plaintiffs. *Id.* ¶ 15.

Plaintiffs sue Defendants Chicago Lakeshore Hospital and Signature; Beverly Walker, Beth Soloman, Neil Skene, Michael Jones, Beverly Mims, Tierney Stutz, Marco Leonardo, Denise Ellis, and Brooke Sloan (DCFS Defendants); Soon K. Kim; and David Fletcher-Janzen, Niama Malachi, Tausha Bluitt, Elisabeth Schei, Richard Kasyoki, Dion Dill, Nickolay Katsarov, Andebola Majekodumni, and Shane Michaels (Chicago Lakeshore-affiliated Defendants). *Id.*

### B.    General Allegations

Plaintiffs claim that Defendants violated their civil rights while hospitalized at the Children's Pavilion at Chicago Lakeshore Hospital. *Id.* Plaintiffs allege that DCFS placed them at Children's Hospital because it was the only hospital willing to take the children, having "worn out its welcome" at other Chicagoland psychiatric hospitals due to the State of Illinois' failure to make timely payments to vendors. *Id.* ¶ 2. Chicagoland psychiatric hospitals generally displayed reluctance to admit children in DCFS care. *Id.* ¶ 52.

 As a result, according to Plaintiffs, DCFS' desperation to have a psychiatric hospital accept its children, combined with the Chicago Lakeshore Defendants' knowledge of this desperation, "created the toxic and dangerous situation" where the Chicago Lakeshore Defendants operated the Children's Hospital with virtually no accountability. *Id.* ¶ 3. The minor Plaintiffs experienced sexual, physical, and

emotional abuse while involuntarily admitted to the Children's Hospital. *Id.* ¶ 73.

### C. Signature and Kim

Plaintiffs claim that Signature and Kim owned, directed, controlled, and managed a network of psychiatric hospitals—including the Children's Hospital—that through Signature's network-wide policies and practices failed to provide a safe setting for patients and allowed for abuse and even death. *Id.* ¶¶ 4, 53. Signature owns Chicago Lakeshore Hospital, and Kim is Signature's sole member. *Id.* ¶ 24. Kim founded Signature in or around 2000 and has held himself out as Signature's president and chief executive officer. *Id.* ¶ 25.

Plaintiff alleges, on information and belief, that prior to 2017, each of the hospitals in Signature's network, at the direction of Signature and Kim, leased its buildings from entities managed and controlled—in whole or in part—by Kim. *Id.* ¶ 54. Chicago Lakeshore Hospital leased the Children's Pavilion from Clarendon Ventures, LLC, an entity managed by Clarendon Properties Inc. and Illinois Life Properties, LLC. *Id.* According to Plaintiffs, Kim has controlled and directed the activities of Clarendon Properties Inc. and Illinois Life Properties, LLC at all relevant times. *Id.*

Plaintiffs also allege, on information and belief, that Signature and Kim required Chicago Lakeshore Hospital, as well as other hospitals within the network, to obtain management services from Signature. *Id.* ¶ 56. As part of those management services, Signature provided those hospitals with their chief executive and chief financial officers and required the hospitals to pay Signature a bonus of

2.5% of their gross revenue payable from the hospital's net income, up to 25% of net income. *Id.* Signature and Kim also required Chicago Lakeshore Hospital to obtain information technology services through Signature; Signature obtained the IT services through Kebok Co., LLC, a company that Kim and his family members own. *Id.* ¶ 57. Plaintiffs allege, on information and belief, that these requirements "placed extraordinary financial pressure" on each of the hospitals' owners, and that Signature and Kim cared more about "bleeding the various hospitals" for every lease and management payment than they cared about patient care. *Id.* ¶¶ 58–59.

As a result, the hospitals within the network would sometimes be forced to operate at a loss to make the required payments to Signature and/or would not be able to hire qualified staff, hire sufficient staff to properly monitor patients, properly train staff, pay staff sufficient wages to retain them, properly maintain the hospital facilities or make other necessary expenditures to ensure patient safety. *Id.* ¶ 60. For instance, until faced with shutdown by government authorities, Signature and Kim refused to allow Chicago Lakeshore Hospital to install functional video surveillance cameras within the Children's Hospital despite Signature knowing that existing cameras did not function. *Id.* ¶ 61. Plaintiffs also claim that the Children's Hospital "was forced to hire unqualified staff and forego proper employee background checks." *Id.* ¶ 63. Plaintiffs additionally allege that, despite receiving "regular reports of abuse at the Children's Hospital," Signature and Kim failed to take or authorize actions necessary to stop the abuse. *Id.* ¶ 64.

### D.     Kim's Declaration

Because Kim has moved to dismiss for lack of personal jurisdiction, he has submitted a declaration regarding the extent of his contacts with the state of Illinois. [338-1].  In the declaration, Kim states that he has been a permanent resident of Michigan for over forty years.  *Id.* ¶ 2.  He also owns a home in California and lives there for temporary periods of time each year.  *Id.*  Kim possesses no personal addresses, phone numbers, of bank accounts in Illinois.  *Id.*

Kim also attests that he has traveled to Illinois "infrequently," and only for private, family affairs, in the past ten years.  *Id.* ¶ 3.  Specifically, over the past ten years, Kim traveled to Illinois approximately once every few years to visit with a family member residing in Illinois.  *Id.*  According to Kim, he did not conduct any business during these family visits to Illinois.  *Id.*

Kim declares that he does not personally manage any of Signature's activities in Illinois and has not done so in the last ten years.  *Id.* ¶ 4.  Kim also states that he has never personally discussed business, including with respect to Chicago Lakeshore Hospital, with any employee or administrator for DCFS.  *Id.* ¶ 9.

### E.     Claims Against Signature and Kim

Plaintiffs bring several claims against Kim, alleging that Kim failed to provide reasonably safe conditions of confinement in violation of 42 U.S.C. Section 1983 (Count I), *id.* ¶ 183, failed to intervene in violation of Section 1983 (Count II), *id.* ¶ 194, engaged in a conspiracy to deprive Plaintiffs of their constitutional rights under Section 1983 (Count III), intentionally inflicted emotional distress (Count X), *id.* ¶

6

245, and engaged in a civil conspiracy to intentionally inflict severe emotional distress (Count XIII), *id.* ¶ 263.

Plaintiffs also claim that Signature maintained policies and practices across its hospital network that included: (1) not keeping patients safe; (2) not properly supervising or monitoring patients; (3) not preserving evidence; (4) fabricating evidence; (5) not obtaining in a timely manner medical examinations for patients who have been assaulted; (6) not conducting proper investigations of patient allegations of assault; (7) not conducting proper background checks on staff; (8) not allowing hospitals within Signature's hospital network to make necessary expenditures to protect the health and safety of patients; (9) not tracking allegations and instances of abuse to prevent future occurrences; and (10) not properly training, supervising, monitoring, and disciplining staff (Count V). *Id.* ¶ 211. Plaintiffs additionally bring state-law claims for negligence against Signature, alleging that Signature failed to exercise reasonable care to ensure a safe environment (Count VII), *id.* ¶ 225, for negligent hiring, training, and retention (Count IX), *id.* ¶ 244, for institutional negligence (Count XII), *id.* ¶ 258, and for *respondeat superior* liability (Count XV), *id.* ¶ 272.

Kim has moved to dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and under Rule 12(b)(6) for failure to state a claim. Signature has moved to dismiss under Rule 12(b)(6) for failure to state a claim.

## II. Legal Standards

### A. Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a claim, not the merits of the case. *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020).

To survive a motion to dismiss under Rule 12(b)(6), the claim "must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). A court deciding a Rule 12(b)(6) motion accepts the well-pleaded factual allegations as true and draws all permissible inferences in the pleading party's favor. *Degroot v. Client Servs., Inc.*, 977 F.3d 656, 659 (7th Cir. 2020). Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

### B. Rule 12(b)(2)

A motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) tests whether this Court has the "power to bring a person into its adjudicative process." *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014) (quotation omitted). The plaintiff need not allege facts concerning personal jurisdiction in his or her complaint, but "once the defendant moves to dismiss the complaint under Federal

Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Curry v. Revolution Labs., LLC*, 949 F.3d 385, 392 (7th Cir. 2020) (quoting *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)).

When a court rules on a Rule 12(b)(2) motion based upon written submissions without holding an evidentiary hearing, the plaintiff need only establish a prima facie case of personal jurisdiction. *Id.* at 392–93; *GCIU-Employer Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023 (7th Cir. 2009). Where, as here, a defendant submits an affidavit regarding personal jurisdiction, this Court accepts as true any facts in the affidavit that do not conflict with the complaint or the plaintiff's submissions. *Curry*, 949 F.3d at 393.

## III.  Analysis

Kim has moved to dismiss all claims against him for lack of personal jurisdiction under Rule 12(b)(2) and for failure to state a claim under Rule 12(b)(6). Signature has moved for partial dismissal of the *Monell* claim against it pursuant to Rule 12(b)(6). This Court will consider each party's arguments in order below.

### A.  Kim's Motion to Dismiss

#### 1.  Personal Jurisdiction

Kim has moved to dismiss for lack of personal jurisdiction. This Court, sitting in Illinois, may exercise jurisdiction over Kim only if authorized both by the United States Constitution and, as applicable, Illinois law. *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019); *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010).

Because the Illinois long-arm statute permits courts to exercise jurisdiction to the full extent permitted by the United States Constitution, the statutory and federal constitutional inquiries merge. *Tamburo*, 601 F.3d at 700. Two types of personal jurisdiction exist: general jurisdiction, which typically exists only in an individual's domicile, *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014), and specific jurisdiction, which exists where the defendant has "purposefully directed" its activities at residents of the forum state and where the plaintiff's claim is "linked to the [defendant's] activities or contacts with" Illinois, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985); *Kipp v. Ski Enterprise Corp. of Wis., Inc.*, 783 F.3d 695, 698 (7th Cir. 2015). This Court must also ensure that exercising personal jurisdiction would not "offend traditional notions of fair play and substantial justice." *Felland v. Clifton*, 682 F.3d 665, 677 (7th Cir. 2012).

Plaintiffs concede that this Court cannot exercise general personal jurisdiction over Kim, [327-1] at 16 n.1, so the sole inquiry is whether specific jurisdiction exists, and if so, whether the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. This Court therefore focuses upon Kim's suit-related conduct and its connection to the forum state, *Walden v. Fiore*, 571 U.S. 277, 284 (2014), asking whether Plaintiffs have shown that: (1) Kim has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state; and (2) the alleged injury arises out of Kim's forum-related activities, *Tamburo*, 601 F.3d at 702; *Stein v. Clarifai, Inc.*, 526 F. Supp. 3d 339, 344 (N.D. Ill. 2021).

Plaintiffs have made this *prima facie* showing by alleging that Kim exercised significant management financial responsibilities over Signature and Chicago Lakeshore in Illinois and that his mismanagement of those entities resulted in Plaintiffs' claimed injuries. [327-1] at 17. Specifically, Plaintiffs point to their allegations that Kim—through Signature—directed, controlled, and managed Chicago Lakeshore Hospital, [282] ¶ 25, and that, on information and belief, Kim (and Signature) placed extraordinary pressure on Chicago Lakeshore through required lease agreements, management services agreements, bonus requirements, and vendor requirements. *Id.* ¶ 58. All of these requirements, Plaintiffs claim, rendered Chicago Lakeshore unable to hire sufficient staff, secure hospital monitoring devices, and ensure patient safety. *Id.* ¶ 60. These allegations establish that Kim purposefully directed conduct toward the State of Illinois and that Plaintiffs' injuries resulted in these forum-related contacts. *See Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017) ("Specific jurisdiction requires a defendant's contacts with the forum State to be directly related to the conduct pertaining to the claims asserted.").

For his part, Kim submits an affidavit renouncing any meaningful ties to the State of Illinois and to this litigation in particular. First, Kim states that he has little physical presence in Illinois because he lives in Michigan and California and has visited Illinois infrequently over the past ten years for only private affairs. [339-1] ¶¶ 2–3. But "physical presence is not necessary for a defendant to have sufficient minimum contacts with a forum state." *Curry*, 949 F.3d at 398. Thus, Kim's lack of physical presence in this State does not weigh against finding personal jurisdiction.

11

Kim additionally denies any personal involvement with Signature's Illinois-related business. Kim attests that he does not personally manage any activities of Signature in Illinois, including with respect to any management service agreements, and has not done so for the last ten years. [339-1] at ¶¶ 2–4. This declaration, however, remains insufficient to defeat personal jurisdiction at this stage because courts must resolve any factual conflicts between the record—the "complaint or other submissions"—and a defendant's affidavit in the plaintiff's favor on a Rule 12(b)(2) motion. *Curry*, 949 F.3d at 393; *see, e.g.*, *Mutnick v. Clearview AI, Inc.*, No. 20 C 0512, 2020 WL 4676667, at *2 (N.D. Ill. Aug. 12, 2020) (resolving a conflict between the complaint's allegations and the defendant's affidavits in the plaintiff's favor for purposes of personal jurisdiction). Consequently, Kim's affidavit renouncing involvement with Signature's Illinois activities fails to overcome the second amended complaint's allegations detailing his extensive involvement with Signature and with Chicago Lakeshore Hospital where Plaintiffs' injuries allegedly occurred.

Moreover, even if Kim did not personally manage Signature's Illinois-based activities, the record indicates that Kim is nonetheless subject to specific jurisdiction due to his high-level managerial role at Signature. The second amended complaint alleges that Kim is the *sole* member of Signature, which owns Chicago Lakeshore Hospital where Plaintiffs' injuries allegedly occurred. [282] ¶¶ 13, 23. Kim does not dispute that he exerts high-level control over Signature generally. *See* [338-1]. Plaintiffs also put forth numerous allegations faulting Kim with his high-level management decisions concerning Signature that led to Plaintiffs' injuries. *See, e.g.*,

[282] ¶¶ 4, 13, 57–61. Plaintiffs also claim that Kim received regular reports of abuse at Chicago Lakeshore Hospital but did nothing to stop or prevent further abuse. *Id.* ¶ 64. Viewed in totality, the facts suggest that, even if Kim did not manage Signature's Illinois-based facility, he made corporate management decisions that were purposefully directed at all Signature entities, including Chicago Lakeshore Hospital. This suffices to establish a *prima facie* case of personal jurisdiction. *See, e.g., Leong v. SAP Am., Inc.*, 901 F. Supp. 2d 1058, 1063 (N.D. Ill. 2012) (ruling that personal jurisdiction existed over human resources officer despite the fact that she never physically traveled to Illinois, because she "made decisions regarding" the plaintiff's "compensation and employment which she knew would affect [the plaintiff]'s job in Illinois"); *Walls v. VRE Chi. Eleven, LLC*, 344 F. Supp. 3d 932, 944 (N.D. Ill. 2018) (finding personal jurisdiction proper over nonresident defendants who "actively participated in a fraudulent scheme that dealt with eleven Illinois properties"); *compare, e.g., Rogers v. City of Hobart*, 996 F.3d 812, 820 (7th Cir. 2021) (finding the lack of personal jurisdiction over a defendant who did not take any "action purposefully designed to have an effect within Illinois").

Kim also contends that a finding of personal jurisdiction would not comport with traditional notions of fair play and substantial justice. [310] at 16. Factors relevant to this inquiry include: the burden on the defendant, the forum State's interest, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental

substantive social policies. *Felland*, 682 F.3d at 677. These factors all weigh in favor of exercising jurisdiction.

Kim protests the burden of having to travel to Illinois to litigate the case, [310] at 16, but "out-of-state defendants *always* face such a burden," *Felland*, 682 F.3d at 677. Further, Illinois has a "strong interest in providing a forum for its residents . . . to seek redress for tort injuries suffered within the state and inflicted by out-of-state actors." *Tamburo*, 601 F.3d at 709. Plaintiffs possess a strong interest in obtaining convenient and effective relief in their home forum, and the judicial system favors one lawsuit involving multiple defendants as opposed to the "cumbersome and impractical" circumstance of multiple lawsuits against multiple defendants in each defendant's home state. *Id.* In sum, the factors counsel in favor of finding that this Court's exercise of personal jurisdiction over Kim would not offend traditional notions of fair play and substantial justice.

For these reasons, this Court denies Kim's motion to dismiss for lack of personal jurisdiction and turns now to the merits of Plaintiffs' claims against Kim.

## 2. Section 1983 Claims: State Actor

Kim next moves to dismiss the Section 1983 claims against him on the basis that Plaintiffs fail to plead that he constitutes a state actor. [310] at 17.

To state a claim under Section 1983, Plaintiffs must allege that an alleged constitutional "deprivation was committed by a person acting under color of state law." *L.P. v. Marian Cath. High Sch.*, 852 F.3d 690, 696 (7th Cir. 2017) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). It is undisputed that Kim is a private actor, not a

state or municipal employee, and thus, he "acts under color of state law" in only a few limited circumstances. *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019). Relevant here, a private actor becomes a "state actor" when he "is performing an action that is traditionally the exclusive prerogative of the State." *Listecki v. Off. Comm. of Unsecured Creditors*, 780 F.3d 731, 740 (7th Cir. 2015) (internal quotation marks omitted); *see Camm v. Faith*, 937 F.3d 1096, 1105 (7th Cir. 2019).

Plaintiffs argue that Kim took on a traditionally exclusive state function through his management and control over Signature and Chicago Lakeshore Hospital. [327-1] at 25. This Court already addressed this theory in its prior opinion as applied to Signature and Chicago Lakeshore Hospital, concluding that those entities took on a traditionally exclusive state function in their treatment of DCFS children. *Golbert*, 2021 WL 952528, at *6. This Court found persuasive *Woods v. Maryville Academy*, where the district court found that a residential childcare facility constituted a state actor because it fulfilled the State's duty to care for the children in its custody. No. 17 C 8273, 2018 WL 6045219, at *7–8 (N.D. Ill. Nov. 19, 2018).

Kim argues that this Court's prior holding extends only to Signature, not to Kim, because Signature is the entity that actually treated patients. But the holding extends also to Kim, who is alleged to be the sole member of Signature and to have operated, managed, controlled, and directed the activities of each of the hospitals in Signature's hospital network, including Chicago Lakeshore Hospital which performed the exclusive state function of treating DCFS minors needing psychiatric

attention. [282] ¶ 53. If it is true, as Plaintiffs allege, that Kim exerted such control over Signature, he certainly could be considered a state actor because he performs a public function in managing the treatment of DCFS minors in need of psychiatric treatment. *See, e.g.*, *Mims v. Wexford Health Sources*, No. 11 C 6049, 2012 WL 6187117, at *4 (N.D. Ill. Dec. 12, 2012) (considering Section 1983 claim against the chief executive officer of a private healthcare provider for the Illinois Department of Corrections).

### 3.     Section 1983: Conditions of Confinement

Kim next argues that Plaintiffs have failed to plead his personal involvement as to Plaintiff's Fourteenth Amendment claim based upon safe conditions of confinement. [310] at 19. For Section 1983 liability to attach, a plaintiff must demonstrate personal involvement; *respondeat superior* liability does not suffice. *Taylor v. Ways*, 999 F.3d 478, 493 (7th Cir. 2021). Kim argues that Plaintiffs have not sufficiently pled his individual involvement because they attribute fault based only upon his high-ranking position at Signature. [310] at 19–20. Kim reads the allegations too narrowly. Plaintiffs allege that Kim *personally* managed, directed, and controlled the activities at Signature; that Kim refused to allow Chicago Lakeshore Hospital to install video surveillance cameras, subjecting Plaintiffs security risks; and that, even after learning about abuses at the Children's Hospital, Kim failed to take any actions to stop the abuse. [282] ¶¶ 24, 61, 64. These allegations more than sufficiently plead Kim's personal, direct involvement with Plaintiff's alleged constitutional deprivations.

### 4.    Section 1983: Failure to Intervene Theory

Kim also argues that Plaintiffs have not alleged sufficient facts to state a plausible failure to intervene theory.  [310] at 20–21.  To succeed on this theory, Plaintiffs must allege that a constitutional violation has been committed and that Kim had a realistic opportunity to intervene to prevent the harm from occurring. *Taylor v. Wexford Health Sources, Inc.*, No. 15 C 5190, 2016 WL 3227310, at *5 (N.D. Ill. June 13, 2016); *Starks v. City of Waukegan*, 946 F. Supp. 2d 780, 789 (N.D. Ill. 2013), *on reconsideration in part* (Aug. 16, 2013).

Kim argues that Plaintiffs have not alleged either knowledge of a constitutional violation nor opportunity to prevent the violation.  [310] at 20.  But as discussed above, Plaintiffs have alleged that Kim and the other Defendants subjected them to unconstitutionally deficient conditions of confinement and that Kim specifically knew about the abuses that occurred at Children's Hospital but failed to take any actions.  [282] ¶ 64.  These allegations plausibly state that Kim both knew of unconstitutional conditions and that he had the opportunity to stop them.

### 5.    Section 1983: Conspiracy

Kim next contends that Plaintiffs have failed to state a Section 1983 conspiracy claim.  [310] at 21.  A Section 1983 conspiracy "requires allegations that the defendants reached an agreement to deprive the plaintiff of his constitutional rights and that a member of the conspiracy took an overt act to deprive him of those rights." *Fulton v. Bartik*, No. 20 C 3118, 2021 WL 2712060, at *11 (N.D. Ill. July 1, 2021) (citing *Daugherty* v. *Page*, 906 F.3d 606, 612 (7th Cir. 2018)).  Kim contends that

Plaintiffs have not presented sufficient allegations showing an express or implied agreement to deprive constitutional rights, nor overt acts in furtherance of such an agreement. [337] at 14. This Court again disagrees. The second amended complaint contains abundant allegations suggesting that Kim, in concert with other Defendants, agreed to cover up the abuses occurring at the Children's Hospital even after they became aware of the abuse. [282] ¶¶ 6, 103. Plaintiffs also allege that the co-conspirators "engaged in concerted efforts to cover-up or discredit the allegations of abuse." *Id.* ¶ 108. These allegations, viewed in totality, paint a plausible picture of an agreement to engage in constitutional violations, as well as overt acts of concealment.

### 6.     State-Law Claims

Kim also moves to dismiss the state-law claims against him for IIED and civil conspiracy. Both claims, however, meet the plausibility standard.

As to the IIED claim, Kim argues that Plaintiffs have failed to allege the requisite intent to cause them severe emotional distress. [310] at 23. An IIED claim requires the plaintiff to plausibly plead: (1) extreme and outrageous conduct; (2) defendant's intent that his conduct inflicts severe emotional distress or knowledge that there exists a high probability that his conduct will cause severe emotional distress; and (3) the conduct must in fact cause severe emotional distress. *Schweihs v. Chase Home Fin., LLC*, 77 N.E.3d 50, 63 (Ill. 2016). Among other allegations, Plaintiffs have asserted that Kim created a dangerous situation for children through his control and management of Children's Hospital, [282] ¶ 4, forcing it to hire

unqualified staff, forego proper employee backgrounds checks, *id.* ¶ 63. The complaint also alleges that Kim received "regular reports of abuse" at the Children's Hospital and failed to stop the abuse. *Id.* ¶ 64. Such allegations raise an inference that, at a minimum, Kim knew there was a high probability that his conduct would cause severe emotional distress to Plaintiffs.

This Court similarly rejects Kim's argument that the civil conspiracy claim against him must be dismissed because Plaintiffs do not allege that he understood and accepted the conspiracy's general objectives. *Contra* [337] at 16. While, as Kim correctly recognizes, civil conspiracy requires Plaintiffs to plausibly plead that he understood the general objectives of the conspiratorial scheme, *Molina v. Latronico*, 430 F. Supp. 3d 420, 439 (N.D. Ill. 2019), Plaintiffs have alleged sufficient facts to raise the inference that Kim understood the general objectives of the alleged conspiracy to inflict severe emotional distress. The second amended complaint pleads in detail that Kim not only participated, but led, an alleged scheme with the other Defendants that included hiring staff unfit to work at a children's psychiatric hospital, failing to implement proper security precautions, covering up and concealing acts of abuse, and failing to properly supervise Plaintiffs. [282] ¶ 264. Based upon these allegations, Plaintiffs have sufficiently pled that Kim understood the general objectives of the conspiratorial scheme.

## B.    Signature's Motion to Dismiss

Signature moves to dismiss Plaintiffs' *Monell* claim against it. In its prior opinion, this Court found that Plaintiffs had stated a viable *Monell* claim based upon

19

alleged policies authorized by Signature's leadership that included failing to properly monitor patients and failing to conduct proper investigations into patient abuse allegations. *See Golbert*, 2021 WL 952528, at *7. This Court also found that Signature could be on the hook for Chicago Lakeshore Hospital's actions under a direct participant theory, and that Signature could be considered a state actor for purposes of Section 1983 liability. *Id.* at *4–6.

Signature states it does not seek to revisit this Court's previous findings that Plaintiffs plausibly plead that Chicago Lakeshore Hospital took on a traditionally exclusive state function in its treatment of DCFS minors and that Signature is on the hook for Chicago Lakeshore Hospital's acts under a direct participant theory of liability. [307] at 2 n.1. Instead, Signature takes issue with Plaintiffs' new allegations focused upon Signature's alleged widespread abuse and other problems at other Signature network hospitals that do not involve Chicago Lakeshore Hospital. [336] at 5–6. Signature argues that these new allegations should be dismissed because they concern Signature's corporate management decisions over its subsidiaries, not its conduct relating to its treatment of DCFS minors, and thus cannot serve as a basis for finding that it constitutes a "state actor" for purposes of Section 1983 liability. *Id.* at 6.

This Court reads the allegations differently than Signature. The newly-pled allegations regarding Signature's management do not seek to hold Signature liable for its private actions. Rather, the new allegations simply set forth greater details regarding Signature's corporate structure and provide a clearer picture of how

20

Signature, in performing its public function through Chicago Lakeshore Hospital, became underfunded and pressured to render unconstitutionally deficient care to the DCFS minors. These allegations bolster Plaintiffs' theory—which this Court already found viable—that a widespread corporate policy or practice caused the harm that occurred in the course of Signature's execution of a public function in caring for DCFS minors. *See Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017) (observing that the critical question under *Monell* is whether a corporate policy or custom "gave rise to the harm").

For similar reasons, this Court also rejects Signature's attempt to dismiss Plaintiffs' allegations about Signature's corporate conduct affecting other facilities as a separate *Monell* theory of liability. [307] at 12–14. As Plaintiffs explain, and as the second amended complaint makes clear, Plaintiffs' allegations about Signature's corporate practices do not attempt to state a *separate* theory of *Monell* liability; they only underscore that such policies exist. [326] at 9, 11; [282] ¶ 211 (detailing a list of policies and practices—including failing to conduct proper investigations of patient allegations of assault, failing to conduct proper background checks—common to the "various hospitals" within the Signature network).

Finally, this Court declines to address Signature's argument that Plaintiffs have failed to allege *Monell* liability under a "final policymaker" theory. [307] at 13. The parties argue over whether Plaintiffs have sufficiently pled that Kim constitutes a final policymaker triggering *Monell* liability. But because, as discussed, Plaintiffs have already stated at least one plausible theory of relief under *Monell*, "there is no

need to consider the others at this juncture." *Savory v. Cannon*, 532 F. Supp. 3d 628, 638 (N.D. Ill. 2021).

## IV. Conclusion

For the reasons explained above, this Court denies Soon Kim's motion to dismiss [309] and denies Signature's motion to dismiss [306].

In addition, because Plaintiffs have agreed to withdraw their request for punitive damages against Defendant Malachi in Counts X and XIII, [319], this Court denies as moot Malachi's motion to dismiss or to strike Plaintiffs' requests for punitive damages as to Counts X and XIII [308].

This Court also denies Eve Brownstone's motion for entry of a Rule 54(b) order. [284]. The Rule permits this Court to "direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). Rule 54(b) serves the purpose of allowing "appeal without delay of claims that are truly separate and distinct from those that remain pending in the district court." *Lottie v. W. Am. Ins. Co., of Ohio Cas. Grp. of Ins. Cos.*, 408 F.3d 935, 939 (7th Cir. 2005). Issuing a Rule 54(b) order here would not serve that purpose, however. This Court already dismissed the first amended complaint's claims against Brownstone, [247], and Plaintiffs have not named Brownstone as a defendant in their second amended complaint, [282]. Thus, there are no live claims against Brownstone, and nothing for Brownstone to immediately appeal. In light of the purpose of Rule 54(b), this Court denies Brownstone's motion [284].

Dated: February 28, 2022

_____
MARY M. ROWLAND
United States District Judge